[No. B237986. Second Dist., Div. One. Mar. 27, 2013.]

STEPHEN P. SHOEMAKER, Plaintiff and Appellant, v.
KAMALA D. HARRIS, as Attorney General, etc., Defendant and
Respondent.

## COUNSEL

Altshuler Berzon, Michael Rubin, Caroline P. Cincotta; Law Office of William Genego and William Genego for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Michael Glenn Witmer and Susan K. Smith, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**CHANEY, J.**—Appellant Stephen P. Shoemaker was convicted in 2004 of misdemeanor possession of child pornography and misdemeanor duplication of child pornography. His conviction was affirmed by the superior court appellate division on January 3, 2006, and his petition for certification to the Court of Appeal was denied.

Shoemaker filed this action in the Los Angeles Superior Court under the federal Civil Rights Act, 42 United States Code section 1983, alleging that the mandatory sex offender registration requirements of Penal Code section 290 deny him equal protection of the laws because they subject him to mandatory lifetime registration, although others convicted of far more egregious sex crimes involving minors are subject only to discretionary registration under Penal Code section 290.006. Upon respondent's demurrer, the superior court ruled that the claim could not be heard as a civil action, and on that basis it transferred the case to a criminal trial court where it was construed as a petition for writ of habeas corpus and was denied on its merits.

Appealing from these rulings, Shoemaker asks that we find the superior court erred in refusing to hear his civil rights action, that we find that application to him of the mandatory registration requirement of Penal Code section 290 violates his right to equal protection of the laws, and that we remand the matter for a determination by the trial court whether he should be required to register under the discretionary registration provisions of Penal Code section 290.006. In the alternative, he asks that we treat his appeal as a petition for writ of habeas corpus directed to this court, and grant his requested relief on that basis. We affirm.[1]

## BACKGROUND FACTS[2]

### *Shoemaker's Conviction of Misdemeanor Offenses*

Shoemaker was a longtime resident of the City of Redondo Beach, and a prominent member of its business community. In 1998 the Redondo Beach police executed a search warrant at one of his business addresses, finding three computer servers containing some thousands of photographic images. The police seized two dozen of these images on suspicion that they might be

---

[1] References to section 1983 are to 42 United States Code section 1983. All other unspecified statutory references are to the Penal Code.

[2] Because the court's rulings rest on respondent's demurrer to Shoemaker's complaint, in our statement of the facts we "assume the truth of the complaint's properly pleaded or implied factual allegations." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].)

obscene or might depict underage subjects. Searches at other businesses and residences owned by Shoemaker resulted in no additional seizures.

Shoemaker and his office manager were charged with over two dozen counts of misdemeanor possession, duplication, or distribution of pornographic or obscene matter. (§§ 311.1, subd. (a), 311.2, subd. (a), 311.3, subd. (a), 311.9, subd. (a), 311.11, subd. (a).) The trial court dismissed eight of the possession counts, as well as the single count that charged him with distributing or publishing obscene matter.

None of the seized images were found to be obscene. The jury acquitted Shoemaker of three counts of possession of child pornography, and failed to reach a verdict as to three other counts of possession. However, it convicted him of eight misdemeanor counts of possession of child pornography in violation of section 311.11, for knowing possession of images with knowledge that they depict minors personally engaging in or simulating sexual conduct, and it convicted him of one misdemeanor count of duplicating child pornography in violation of section 311.3, for knowing duplication of an image that depicts a minor engaged in sexual conduct. Shoemaker was not convicted of distributing or displaying any child pornography. His convictions were based solely on his private possession and private duplication (by transfer from one office computer to another) of images that the jury found to be nonobscene child pornography.[3]

Shoemaker was sentenced to 36 months of probation and a fine of $17,000. As a condition of probation, he was ordered to serve two concurrent 90-day terms in custody and to complete a one-year sexual compulsiveness counseling program. On January 3, 2006, the appellate division of the superior court affirmed his conviction in a memorandum judgment.[4]

---

[3] Child pornography does not require a number of the elements required for proof of obscenity. For example, it does not require that the material appeal to the prurient interest of the average person, the sexual conduct need not be portrayed in a patently offensive manner, the material need not be considered as a whole (*New York v. Ferber* (1982) 458 U.S. 747, 764–765 [73 L.Ed.2d 1113, 102 S.Ct. 3348]), and under certain circumstances, the material's content need not be without serious literary, artistic, or other value (*Ashcroft v. Free Speech Coalition* (2002) 535 U.S. 234, 249 [152 L.Ed.2d 403, 122 S.Ct. 1389]).

According to Shoemaker, a pending federal habeas corpus petition in the United States Court of Appeals for the Ninth Circuit challenges whether the nonobscene images for which he was convicted are legally actionable as child pornography.

[4] This court has granted the requests of both parties for judicial notice of the appellate division's January 3, 2006 memorandum judgment in case No. BR043391, affirming Shoemaker's criminal conviction in case No. 9SB04308.

Pursuant to the mandatory registration requirements of the Sex Offender Registration Act (§ 290 et seq.), Shoemaker was required, and continues to be required for the remainder of his life, to register as a sex offender. (§§ 290, 3003.5.)[5]

*Shoemaker's Civil Action Under Section 1983 (Case No. BC464607)*

On June 30, 2011, Shoemaker filed an action in the Los Angeles Superior Court, under 42 United States Code section 1983, alleging that the mandatory sex offender registration requirement of section 290 denies him equal protection of the laws under both the federal and state Constitutions. (*Shoemaker v. Harris* (Super. Ct. L.A. County, 2011, No. BC464607).) Shoemaker's civil complaint contended that the mandatory registration requirement subjects him and others convicted of misdemeanor child pornography offenses under sections 311.11 and 311.3 to mandatory lifetime registration, but that the law subjects others, who are convicted of far more egregious sex crimes against minors, only to discretionary registration under section 290.006. His action sought a declaration that the mandatory registration requirement of section 290 violates the Fourteenth Amendment to the United States Constitution, article I, section 7, subdivision (a) of the California Constitution, and 42 United States Code section 1983; it sought an order vacating the mandatory registration requirement, and removing his name from the sex offender registry; it sought an order directing the court in his criminal case to exercise its discretion under section 290.006 to determine whether, and under what conditions, Shoemaker should be required to register as a sex offender;[6] and it sought attorney fees and costs pursuant to 42 United States Code section 1988.

Respondent demurred, seeking dismissal of the complaint on the ground that the superior court lacked subject matter jurisdiction, "because the relief Plaintiff seeks may only be had by way of petition for writ of mandamus or habeas corpus . . . ." Shoemaker filed an opposition to the demurrer, and respondent filed a reply.

---

[5] The Sex Offender Registration Act provides that one convicted of the offenses listed in subdivision (c) of section 290 (including §§ 311.11, 311.3) is required to register as a sex offender "for the rest of his or her life while residing in California . . . ." (§ 290, subds. (b), (c).) Registration must be renewed annually and upon any change of address. (§§ 290.012, 290.013.) Registered sex offenders are barred from residing "within 2000 feet of any public or private school, or park where children regularly gather" (§ 3003.5, subd. (b)), and are subject to additional future residency and other restrictions that the county and the municipality of their residence might impose (§ 3003.5, subd. (c)).

[6] Section 290.006 provides that "[a]ny person ordered by any court to register pursuant to the Act for any offense not included specifically in subdivision (c) of Section 290, shall so register, if the court finds . . . that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification. The court shall state on the record the reasons for its findings and the reasons for requiring registration."

On September 23, 2011, the court (Dept. 78, William F. Fahey, Judge) heard argument on the demurrer, taking the matter under submission in anticipation of a stipulation to transfer the case to a criminal law department. However, there was no stipulation.[7]

On October 3, 2011, the court in Department 78 nevertheless transferred the case to a criminal law department. Without addressing the complaint's request for declaratory relief, the court held that it could not grant the secondary relief sought by Shoemaker's action: "This Court does not sit as a quasi-appellate court with the power to direct a sister court as to its discretionary powers. As a matter of comity, this Court declines to exercise its theoretical jurisdiction over this dispute." The court in Department 78 transferred the action to Department 127, the criminal department in which Shoemaker had been sentenced.

*Civil Action Is Treated as Habeas Corpus Petition (Case No. 9SB04308)*

On October, 18, 2011, case No. 9SB04308 was called "for habeas corpus petition" in Department 500 of the superior court, Patricia M. Schnegg, Judge. Department 500's October 18, 2011 minute order recites that on October 7, 2011, Shoemaker's civil action (case No. BC464607) had been transferred to Department 500, a criminal law department, "under its original criminal case number 9SB04308."[8]

The court in Department 500 reviewed respondent's demurrer, Shoemaker's opposition, and respondent's reply. Its order finds that Shoemaker's claim is not the proper subject of a civil complaint under 42 United States Code section 1983, because that law cannot be used to call into question the legality of his conviction or confinement; it finds that "habeas corpus is the proper vehicle for raising these claims" and his complaint would be treated as a habeas corpus petition; and it finds that habeas corpus would be denied, because Shoemaker's mandatory sex offender registration requirement "does not violate his right to equal protection of the laws under the California Constitution."

---

[7] Shoemaker expressed his willingness to stipulate to a transfer of the case to a criminal law department, "in its entirety as a 1983 action"; however, respondent apparently would not agree to the transfer on that basis.

[8] On its own motion *this court takes notice of the superior court docket for case* No. 9SB04308. (Evid. Code, §§ 451, subd. (a), 452.5, subd. (a).) The criminal court docket for October 7, 2011, recites that case No. BC464607, Shoemaker's "civil complaint for declaratory and injunctive relief," was transferred from Department 78 to Department 527. The court there found that the case should have been filed under case No. 9SB04308, and transferred the case under that number to Department 100 "for consideration/ruling." The next docket entry is on October 18, 2011, in Department 500.

*Shoemaker's Application for Entry of Judgment (Case No. BC464607)*

On November 3, 2011, Shoemaker filed an application for entry of judgment in his civil action, case No. BC464607. His application alleged the filing of his civil action, the action's transfer to a criminal law department, the criminal court's denial of habeas corpus in case No. 9SB04308, and his need for a formal judgment in the civil action in order to obtain appellate review of the court's treatment of the action as a petition for writ of habeas corpus.

According to the Department 500 minute order, on December 7, 2011, "[t]he court staff has informed petitioner's counsel that the criminal courts do not have access to the civil case management computer system and are unable to enter any form of judgment in a civil case matter [*sic*]." Upon Shoemaker's expression of an intention to file the application for entry of judgment in the civil division of the court, under the civil case number, the court in Department 500 transferred the matter to Department 127 "for further proceedings."

On December 18, 2011, Shoemaker again filed his application for entry of judgment in case No. BC464607 (attaching the minute orders reflecting Dept. 500's refusal to enter judgment), along with a proposed judgment in favor of defendant Kamala D. Harris and against plaintiff Stephen P. Shoemaker.[9] The record reflects no ruling on that application.[10]

Shoemaker filed his notice of appeal in case No. BC464607 on December 19, 2011. He asks this court (1) to reverse the trial court's dismissal of his complaint; (2) to declare that mandatory registration under section 290 violates his right to equal protection; and (3) to remand the case with directions to the superior court to exercise its discretion under section 290.006 to determine whether he should be required to continue registering as a sex offender. Respondent does not object to this court hearing the merits of Shoemaker's equal protection claim, but suggests that the claim should be treated as a new petition for writ of habeas corpus directed to this court, rather than as an appeal from the superior court rulings. (See *In re Crow* (1971) 4 Cal.3d 613, 621 & fn. 8 [94 Cal.Rptr. 254, 483 P.2d 1206] [superior court's denial of habeas corpus relief is not appealable, but is subject to new petition in higher court].)

---

[9] The record does not identify the superior court departments in which the application for entry of judgment was filed. Shoemaker's opening brief represents that it was filed in Departments 78 and 100.

[10] Filings and rulings reflected in Department 500's minute orders are sometimes cited as having occurred in Department 100. We treat the particular superior court department numbers as significant only for purposes of identification.

We conclude that Shoemaker's equal protection claim should be denied on its merits, without regard to its procedural form—either a petition for writ of habeas corpus, or an appeal from orders having the effect of dismissing Shoemaker's civil action after sustaining respondent's demurrer and transforming his civil action into a petition for writ of habeas corpus.

## DISCUSSION

A. *The Trial Court's Treatment of Shoemaker's Equal Protection Claim as a Petition for Writ of Habeas Corpus.*

 1. *The* Hofsheier *and* Picklesimer *decisions as genesis of Shoemaker's section 1983 claim.*

Shoemaker seeks relief on the merits of his claim based on two earlier decisions. In *People v. Hofsheier* (2006) 37 Cal.4th 1185 [39 Cal.Rptr.3d 821, 129 P.3d 29] (*Hofsheier*), the 22-year-old defendant had been convicted of violating section 288a, subdivision (b)(1), by engaging in nonforcible oral copulation with a 16-year-old girl. On appeal, the Supreme Court held that imposition of section 290's mandatory lifetime sex offender registration requirement denied him equal protection of the laws under the United States and California Constitutions, because under section 290, someone convicted of nonforcible sexual intercourse (rather than oral copulation) with a minor of the same age would not be subject to mandatory registration.

The Supreme Court held that no rational justification supported the disparate treatment of nonforcible oral copulation with a 16- or 17-year-old minor and nonforcible sexual intercourse with a 16- or 17-year-old minor, with respect to the sex offender registration requirements. The imposition of mandatory registration for one offense, but registration only in the court's discretion upon the terms of section 290.006 for the other, therefore violated equal protection of the laws. (*Hofsheier, supra,* 37 Cal.4th at pp. 1200–1207.) On that basis the court invalidated the mandatory registration requirement for defendant Hofsheier (and others in his position), and remanded the matter for the trial court's determination whether registration should be imposed on him as a matter of its discretion under section 290.006. (*Hofsheier, supra,* 37 Cal.4th at pp. 1208–1209.)

In *People v. Picklesimer* (2010) 48 Cal.4th 330 [106 Cal.Rptr.3d 239, 226 P.3d 348] (*Picklesimer*), as in *Hofsheier,* the defendant had been convicted of oral copulation with a minor; however, he had fully served his sentence and was no longer in actual or constructive custody. He challenged the application of section 290's mandatory registration requirement to him, in a motion for relief filed under his long-since-final criminal court case number.

The Supreme Court held, however, that his *Hofsheier* challenge could not be addressed in that forum.[11] "[F]or those like defendant . . . Picklesimer, who are no longer in custody and whose appeals are final, claims for *Hofsheier* relief . . . must be brought by way of a petition for writ of mandate in the trial court. A freestanding postjudgment motion for *Hofsheier* relief, such as the one Picklesimer filed, is not cognizable . . . ." (*Picklesimer, supra,* 48 Cal.4th at p. 335; see *id.* at pp. 336–340.)

The court therefore dismissed Picklesimer's motion without prejudice to his opportunity to convert his motion to a petition for writ of mandate for hearing on its merits. (*Picklesimer, supra,* 48 Cal.4th at pp. 339, 346.) In connection with this ruling, the court also explained that for a custodial defendant, "a petition for writ of habeas corpus . . . is the preferred method by which to challenge circumstances or actions declared unconstitutional after the defendant's conviction became final." (*Id.* at p. 339.)

 2. *Shoemaker's civil action under section 1983 as a vehicle for his equal protection claim.*

Title 42 United States Code section 1983, part of the federal Civil Rights Act, provides remedies for violations of federal rights committed by persons acting under color of state law. Shoemaker filed his request for *Hofsheier* relief as an independent civil action under section 1983, claiming that the application of the mandatory sex offender registration requirement to him violates his right to equal protection of the laws. In our federal system of government, state courts as well as federal courts have jurisdiction over suits brought pursuant to section 1983. (*Haywood v. Drown* (2009) 556 U.S. 729, 731 [173 L.Ed.2d 920, 129 S.Ct. 2108]; *Brown v. Pitchess* (1975) 13 Cal.3d 518, 521–522 [119 Cal.Rptr. 204, 531 P.2d 772].)

The trial court ruled that Shoemaker's action could not proceed as a civil action under 42 United States Code section 1983, because the *Picklesimer* case identified habeas corpus as the "preferred" procedure for *Hofsheier* challenges by those who remain in actual or constructive custody. (*Picklesimer, supra,* 48 Cal.4th at p. 339.) Shoemaker challenges that ruling, contending that the superior court retained jurisdiction to address his claim in a civil action under section 1983, notwithstanding the *Picklesimer* court's

---

[11] "Following appellate affirmance of a trial court judgment and issuance of a remittitur, 'the trial court is revested with jurisdiction of the case, *but only to carry out the judgment as ordered by the appellate court.*'" (*Picklesimer, supra,* 48 Cal.4th at p. 337.) Because the registration requirements and placement in the sex offender registry are not part of his judgment, the trial court's jurisdiction to carry out the judgment "did not grant it authority to act on a motion seeking to modify an obligation that was not any part of the judgment." (*Id.* at p. 338.)

identification of habeas corpus as the preferred procedure for a custodial defendant's *Hofsheier* challenge.[12]

Shoemaker argues that a state is constitutionally precluded from interposing a rule that limits access to its courts for claims brought under 42 United States Code section 1983, as the rule that habeas corpus is his exclusive remedy does in this case. The supremacy clause of the United States Constitution precludes the superior court from avoiding its obligation to enforce section 1983's rights and remedies, he contends, because its rule does not concern the court's personal or subject matter jurisdiction and does not apply neutrally to all actions brought to enforce federal rights. (*Howlett v. Rose* (1990) 496 U.S. 356, 381 [110 L.Ed.2d 332, 110 S.Ct. 2430] [state rule cannot limit enforcement of § 1983 unless it is neutral rule reflecting "the concerns of power over the person and competence over the subject matter that jurisdictional rules are designed to protect"]; see *Haywood v. Drown, supra,* 556 U.S. at pp. 735, 738 [listing the "handful of cases" that have approved state rules limiting actions under § 1983].) A state jurisdictional rule cannot "be used as a device to undermine federal law, no matter how evenhanded it may appear." (*Haywood v. Drown, supra,* 556 U.S. at p. 739; see *Howlett v. Rose, supra,* 496 U.S. at p. 372.)[13]

The fact that a remedy other than 42 United States Code section 1983 is available to address Shoemaker's *Hofsheier* claim does not validate the court's ruling precluding him from proceeding under section 1983, he argues. "[W]here the same type of claim . . . would be enforced in the state courts, the state courts are generally not free to refuse enforcement of the federal claim." (*Martinez v. California* (1980) 444 U.S. 277, 283–284, fn. 7 [62 L.Ed.2d 481, 100 S.Ct. 553]; see *McNeese v. Board of Education* (1963) 373 U.S. 668, 671 [10 L.Ed.2d 622, 83 S.Ct. 1433] ["relief under the Civil

---

[12] The *Picklesimer* case did not involve a custodial defendant, and it did not involve (or address the availability of) a claim brought under 42 United States Code section 1983. The cases *Picklesimer* cites to support the proposition that habeas corpus is the "preferred procedure" do not involve *Hofsheier* challenges, and do not hold that actions under section 1983 are unavailable. (*Picklesimer, supra,* 48 Cal.4th at p. 339.) *People v. Fuhrman* (1997) 16 Cal.4th 930, 942 [67 Cal.Rptr.2d 1, 941 P.2d 1189], and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530, footnote 13 [53 Cal.Rptr.2d 789, 917 P.2d 628], hold that defendants serving sentences under the "Three Strikes" law may challenge a trial court's refusal to exercise discretion to strike prior felony conviction allegations, either on appeal or by petition for writ of habeas corpus. *People v. Tenorio* (1970) 3 Cal.3d 89, 95, footnote 2 [89 Cal.Rptr. 249, 473 P.2d 993], holds that a prisoner sentenced after a specified date, whose sentence was augmented by virtue of a prior narcotics conviction, "may file a habeas corpus petition . . . inviting the exercise of discretion to dismiss the prior conviction."

[13] State law habeas corpus procedures impose far more stringent timing and pleading requirements on all parties, and limit remedies that might be available in a civil action brought under 42 United States Code section 1983 (such as attorney fees and punitive damages). (E.g., §§ 1474 [verification of petition], 1477 [party to whom writ is directed], 1483 [timing of hearing]; see *In re Crow, supra,* 4 Cal.3d at p. 621 & fn. 8 [appellate rights].)

Rights Act may not be defeated because relief was not first sought under state law which provided a remedy"].) Because the superior court has jurisdiction to hear his *Hofsheier* challenge (as *Hofsheier* and *Picklesimer* confirm it does), Code of Civil Procedure section 187 grants it the authority to exercise its powers as may be necessary to carry out that jurisdiction—including by addressing the issue in his action under section 1983.[14]

Moreover, Shoemaker's 42 United States Code section 1983 action sought no determination that his conviction or sentence is in any respect unsound or invalid, or that it should be set aside or modified in any way—ordinarily a jurisdictional prerequisite to habeas corpus relief. (*People v. Villa* (2009) 45 Cal.4th 1063, 1070 [90 Cal.Rptr.3d 344, 202 P.3d 427]; see *Yount v. City of Sacramento* (2008) 43 Cal.4th 885, 898–899, 902 [76 Cal.Rptr.3d 787, 183 P.3d 471] [§ 1983 action for battery arising from officer's use of deadly force is not barred if it does not deny that officers had right to use reasonable force].) A section 1983 action that does not challenge the validity of the plaintiff's conviction or sentence may ordinarily proceed without a prior habeas corpus proceeding. (See *Heck v. Humphrey* (1994) 512 U.S. 477, 486–487 [129 L.Ed.2d 383, 114 S.Ct. 2364].)[15] Here, neither the trial court nor respondent has identified any way in which Shoemaker's section 1983 action challenges or implies any defect in his criminal conviction or sentence.

Both *Picklesimer* and *Hofsheier* confirm the settled proposition that " 'sex offender registration is not considered a form of punishment under the state or federal Constitution . . . .' " (*Picklesimer, supra,* 48 Cal.4th at pp. 343–344; see *Hofsheier, supra,* 37 Cal.4th at p. 1197; see also *In re Stier* (2007) 152 Cal.App.4th 63, 83 [61 Cal.Rptr.3d 181] [sex offender registration requirement is merely noncustodial collateral consequence of conviction]; *Henry v. Lungren* (9th Cir. 1999) 164 F.3d 1240, 1242 [sex offender registration requirement "is merely a collateral consequence of conviction"]; *Fritz v. Colorado* (D.Colo. 2002) 223 F.Supp.2d 1197 [42 U.S.C. § 1983

---

[14] Section 187 of the Code of Civil Procedure provides: "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction . . . , any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

[15] In *Heck v. Humphrey, supra,* 512 U.S. at pages 486–487 (relied upon by the trial court in this case), the United States Supreme Court held that where a claim necessarily implies a defect in the underlying criminal conviction or sentence, the plaintiff can pursue relief under 42 United States Code section 1983 only after obtaining habeas corpus relief with respect to the conviction or sentence. "This requirement avoids a collateral attack on the conviction and relitigation of issues of probable cause and guilt, and protects the strong judicial policy against inconsistent resolutions arising from identical facts." (*Susag v. City of Lake Forest* (2002) 94 Cal.App.4th 1401, 1408–1409 [115 Cal.Rptr.2d 269].)

action challenging mandatory sex offender registration requirement is cognizable, because it does not challenge or undermine validity of conviction or sentence].)

Shoemaker contends on these grounds that the merits of his *Hofsheier* challenge were cognizable in the superior courts of California as an action under 42 United States Code section 1983, even if a petition for habeas corpus relief would have been an available or preferred procedure. He contends that neither *Picklesimer* nor any other California authority mandates that his claim can be heard only as a petition for habeas corpus relief, and that the ruling cannot be reconciled with the law relating to state court jurisdiction under section 1983. On the basis of these factors Shoemaker urges this court to find that the superior court erred by ruling that it lacked jurisdiction to hear his *Hofsheier* challenge as a civil action under section 1983, and that his claim could be heard only as a petition for writ of habeas corpus.[16]

We decline that invitation, however, as unnecessary to our decision. As discussed below, this court has jurisdiction to reach the merits of Shoemaker's *Hofsheier* challenge, either as an appeal or as a petition for writ of habeas corpus.

B. *Jurisdiction to Review Shoemaker's Equal Protection Claim on Its Merits.*

Shoemaker's notice of appeal characterizes his appeal as being "from transfer (10/4/2011, Dept 78) and dismissal of action (10/19/2011, Dept. 100)"—orders that are not themselves a final judgment or among the orders that the Code identifies as appealable. (Code Civ. Proc., § 904.1; see *Caruso v. Snap-Tite, Inc.* (1969) 275 Cal.App.2d 211, 213 [79 Cal.Rptr. 642] [no order is appealable unless it comes within class enumerated by statute].) Nor does the record reflect any order identified as a dismissal of Shoemaker's civil action.

This court's appellate jurisdiction could be invoked by treating these orders as equivalent to an appealable judgment of dismissal. (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 527–528 & fn. 1 [107 Cal.Rptr.3d 481] [where

---

[16] In light of these factors, there remains a question whether the statement in *Picklesimer*, that a petition for writ of habeas corpus is the "preferred method" for a *Hofsheier* challenge by one who remains in constructive custody, should be interpreted to preclude the use of other procedures for that purpose, and whether it is consistent with the rules stated in *In re Stier, supra*, 152 Cal.App.4th at pages 82–83, and *People v. Villa, supra*, 45 Cal.4th at page 1070, that sex offender registration requirements are merely a collateral consequence of a conviction, and that collateral consequences of a conviction cannot justify habeas corpus jurisdiction.

" 'all that is left to make the order appealable is the formality of the entry of a dismissal order or judgment,' " the appellate court may deem order sustaining demurrer to be appealable order of dismissal]; see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2012) ¶ 2:74, p. 2-44 (rev. # 1, 2012).) The orders effectively ended proceedings in Shoemaker's civil action, while abandoning its civil case number and refusing to acknowledge its dismissal.

The merits of Shoemaker's equal protection claim would also be before this court if his appeal is treated as a petition for writ of habeas corpus, rather than deeming it to be an appeal from orders implied from the record. (Cal. Const., art. VI, § 10 [courts of appeal have original jurisdiction in habeas corpus proceedings]; Pen. Code, § 1508.) Moreover, the standard of review is the same. Whether treated as an appeal or as a petition for writ of habeas corpus, Shoemaker's equal protection claim is subject to de novo review. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].)[17]

■ Both Shoemaker and respondent agree that this court may reach the merits of Shoemaker's *Hofsheier* challenge. (See *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 511 [46 Cal.Rptr.3d 408] ["The label given a petition, action or other pleading is not determinative" of court's jurisdiction to address merits of claim.].) And they agree that our review is de novo. Because our jurisdiction to determine the merits of Shoemaker's equal protection claim is properly invoked, whether by habeas corpus petition or by appeal, we proceed to the merits of the issue without further consideration of that procedural question.

C. *The Mandatory Sex Offender Registration Requirement of Section 290 Does Not Violate Shoemaker's Right to Equal Protection of the Laws.*

1. *Shoemaker's Offenses.*

Sections 311.11 and 311.3, the offenses for which Shoemaker was convicted, involve possession and duplication of images of minors engaged in sexual conduct. Section 311.11, subdivision (a) (so far as relevant here), targets the defendant's knowing possession or control of materials, knowing that the materials depict a minor personally engaging in, or simulating, sexual

[17] Although "[a]n appeal is 'limited to the four corners of the [underlying] record on appeal . . . ,' " while "[h]abeas corpus is not" (*People v. Waidla* (2000) 22 Cal.4th 690, 703, fn. 1 [94 Cal.Rptr.2d 396, 996 P.2d 46], citation omitted), in this case we discern no significant difference in the record.

conduct. The offense in section 311.3, subdivision (a), targets the defendant's knowing duplication of an image that depicts a minor engaged in sexual conduct. "Sexual conduct" is defined to include an exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer. (§§ 311.3, subd. (b), 311.4, subd. (d)(1).) It does not require that the images depict any actual sex activity. (*People v. Kongs* (1994) 30 Cal.App.4th 1741, 1755–1756 [37 Cal.Rptr.2d 327] ["sexual conduct" may include images of girls in bathing suits, or underwear or girls wearing skirts, when exhibited for the purpose of the viewer's sexual stimulation].)

The memorandum judgment of the superior court appellate division, affirming Shoemaker's convictions on appeal, describes each of the 10 photographic images involved in the nine misdemeanor counts for which Shoemaker was convicted. Expert testimony at Shoemaker's trial provided evidence that each of the individuals depicted in the images (with perhaps one exception) was a child of between about nine or 10, and 14 or 15 years old. Each of the images depicts one or more nude girls, and some also depict one or more nude boys. At least one of the images depicts what is undeniably overt sexual activity; the others were found by the jury and the reviewing court to come within the requirements of sections 311.11, subdivision (a), and 311.3, subdivision (a), by depicting either overtly sexual conduct (such as sexual intercourse, oral copulation, and masturbation), or other conduct constituting the "[e]xhibition of the genitals or the pubic or rectal area . . . for the purpose of sexual stimulation of the viewer." (§ 311.3, subd. (b).)

### 2. Mandatory Lifetime Registration Under Section 290.

■ Section 290 provides in subdivision (b) that every person convicted of an offense listed in subdivision (c) of that section "shall be required to register" for the rest of his or her life, while residing, working, or attending school in California. (§ 290, subds. (a), (b).) The list in subdivision (c) identifies a few dozen sections and subdivisions of the Penal Code, including sections 311.11 and 311.3.

### 3. Discretionary Registration Under Section 290.

Although sex offender registration is mandatory for those convicted of violating section 311.11 or 311.3, those convicted of offenses that are not listed in subdivision (c) of section 290 may also be required to register under certain circumstances. The court may exercise its discretion to require registration, "if the court finds at the time of conviction or sentencing that the

person committed the offense as a result of sexual compulsion or for purposes of sexual gratification," and if the court identifies on the record the reasons for its findings and for requiring registration. (§ 290.006; see *Hofsheier, supra,* 37 Cal.4th at p. 1197.) For offenses not listed in section 290, the trial court is granted discretion to weigh the reasons for and against imposing registration in each particular case. (*Hofsheier, supra,* 37 Cal.4th at p. 1197.) Moreover, a conviction of an offense that requires mandatory registration precludes any plea bargain that registration will not be required; but one convicted of an offense that requires registration only in the court's discretion may bargain for that result. (*Ibid.; People v. Olea* (1997) 59 Cal.App.4th 1289, 1296 [69 Cal.Rptr.2d 722].)

### 4. *Equal Protection Analysis.*

It is Shoemaker's contention that the application of the mandatory registration requirements of section 290 to his convictions under sections 311.11 and 311.3 violate the equal protection provisions of the California and United States Constitutions. His theory is that "[n]o rational basis exists for requiring *mandatory* lifetime sex offender registration . . . for someone like Mr. Shoemaker who was convicted of purely private possession and duplication of child pornography, while giving trial judges statutory *discretion* to decide whether to require registration of similarly situated persons convicted of other, more egregious sex crimes."

■ As with any equal protection challenge, " ' "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated groups* in an unequal manner." [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." [Citation.]' " (*People v. McKee* (2010) 47 Cal.4th 1172, 1219 [104 Cal.Rptr.3d 427, 223 P.3d 566], quoting *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654]; see *Hofsheier, supra,* 37 Cal.4th at pp. 1199–1200.)

In *Hofsheier,* the equal protection violation resulted from the fact that section 290 required mandatory registration for the 22-year-old defendant's nonforcible act of oral copulation with a minor, while nonforcible sexual intercourse with a minor, although no less serious than oral copulation, would result in imposition of a registration requirement only in the court's discretion. (*Hofsheier, supra,* 37 Cal.4th 1185.) Since the decision in *Hofsheier,*

courts have extended its holding to other felony offenses involving nonforcible sexual conduct of minors of various ages.[18]

Shoemaker supports his equal protection argument by identifying seven other misdemeanor offenses that are not listed in section 290, and for which mandatory sex-offender registration therefore is not required:

(1) Knowingly distributing or exhibiting "harmful matter" to a minor (§ 313.1), which requires proof that the defendant knowingly sold, distributed, or exhibited harmful matter to someone he knew or should have known was a minor (§ 313).[19]

(2) The first offense of knowingly distributing "harmful matter" to a minor intending to arouse the minor for the purpose of seducing the minor. (§ 288.2.)

(3) Sexual intercourse with a minor who is not the perpetrator's spouse. (§ 261.5.)

(4) Engaging in degrading, lewd, immoral, or vicious habits or practices in the presence of a child. (§ 273g.)

(5) Oral copulation with a minor. (§ 288a.)

(6) Keeping a minor in a house used for prostitution. (§ 309.)

---

[18] E.g., *People v. Thompson* (2009) 177 Cal.App.4th 1424, 1431 [100 Cal.Rptr.3d 57] (36-year-old defendant convicted of voluntary sodomy with a 17 year old, under § 286, subd. (b)(1)); *People v. Luansing* (2009) 176 Cal.App.4th 676, 685 [97 Cal.Rptr.3d 836], disapproved on another ground in *Picklesimer, supra,* 48 Cal.4th at page 338, footnote 4. (defendant more than 10 years older than a minor convicted of oral copulation with a person under age 16 by a person older than age 21, under § 288a, subd. (b)(2)); *People v. Ranscht* (2009) 173 Cal.App.4th 1369, 1375 [93 Cal.Rptr.3d 800] (defendant convicted of voluntary digital penetration of a 13 year old's vagina, under § 289, subd. (h)); *In re J.P.* (2009) 170 Cal.App.4th 1292, 1299–1300 [89 Cal.Rptr.3d 17] (juvenile defendant convicted of voluntary oral copulation with minor under 18 years old, under § 288a, subd. (b)(1), even though minor in fact was under 14); *People v. Hernandez* (2008) 166 Cal.App.4th 641, 650 [83 Cal.Rptr.3d 29], disapproved on another ground in *Picklesimer, supra,* 48 Cal.4th at page 338, footnote 4 (defendant over age 21 convicted under § 288a, subd. (b)(2), of voluntary oral copulation with 14- or 15-year-old minors); *People v. Garcia* (2008) 161 Cal.App.4th 475, 482 [74 Cal.Rptr.3d 681], disapproved on another ground in *Picklesimer, supra,* 48 Cal.4th at page 338, footnote 4 (same).

[19] " 'Harmful matter' " is defined as "matter, taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest, and is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct and which, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors." (§ 313, subd. (a).)

(7) Knowingly procuring a minor for an obscene, indecent, or immoral purpose (Lab. Code, § 1308, subd. (a)(3)), which requires proof that a defendant with the care, custody, or control of a minor procured or encouraged the minor to engage in an obscene, indecent, or immoral purpose, exhibition, or practice.

Shoemaker contends that each of these seven other offenses involves the actual sexual exploitation and victimization of a child, either by exposing a child to harmful sexual content or behavior (§§ 313.1, 288.2, 273g, 309), by the defendant's sexual activity with the child (§§ 261.5, 288a), or by using the child for an obscene, indecent, or immoral purpose (Lab. Code, § 1308).[20] On the other hand, he contends, his offenses were less egregious, for they involved only the private possession or duplication of images. They did not involve his interaction with any minor; they depicted conduct that was not necessarily actual sexual conduct, but could have been simulated; and the minors depicted in the images might have been "morphed" images, rather than images of actual minors engaged in sexual conduct.[21]

Each of the seven other listed offenses, Shoemaker contends, "involve[s] greater, ongoing, and more direct and long-term harm" to its minor victims. Applying the principles set forth in *Hofsheier*, Shoemaker argues that the disparate registration requirements for these offenses—mandatory registration for offenses in one category, but only discretionary registration for the more egregious offenses in the other category—lack any rational basis and therefore violate the equal protection provisions of the California and United States Constitutions.

 The analysis of equal protection issues involves different levels of scrutiny, depending on the interests being protected. Because this case does

---

[20] The listed statutes also encompass some conduct that is not necessarily sexually oriented at all, and that therefore would be unlikely to qualify for even discretionary imposition of a registration requirement. (E.g., Lab. Code, § 1308, subd. (a)(1) & (2) [knowingly procuring a minor to engage in a dangerous or injurious business, exhibition, vocation, or service of singing, playing a musical instrument, wire walking, dancing, begging, or as a gymnast, acrobat, contortionist, or rider].) Shoemaker does not equate such offenses with his own, for equal protection purposes.

[21] Shoemaker was convicted before the decision in *People v. Gerber* (2011) 196 Cal.App.4th 368, 386 [126 Cal.Rptr.3d 688], which construed section 311.11 to require that "a real child actually engaged in or simulated the sexual conduct depicted" in the image possessed by the defendant. (See *Ashcroft v. Free Speech Coalition, supra,* 535 U.S. 234, 250 [no legitimate governmental interest in protecting children where no real children are involved in the sexually explicit images].) His complaint in this case alleges that some of the images underlying his conviction were "morphed" images that superimposed a minor's face on an image of an adult's body. His argument on this point was rejected in his appeal from his conviction, however, based on the decisions in *Ashcroft v. Free Speech Coalition, supra,* 535 U.S. at page 242, and *U.S. v. Bach* (8th Cir. 2005) 400 F.3d 622, 632, that child pornography using morphed images nevertheless implicates the interests of real children.

not involve suspect classifications, fundamental interests, or gender-based classifications, the subject legislation is tested only to determine if the challenged classification bears a rational relationship to a legitimate state purpose. (*Hofsheier, supra,* 37 Cal.4th at p. 1200; see *People v. McKee, supra,* 47 Cal.4th at p. 1211, fn. 14 [lifetime sex offender registration requirement of § 290 is regulatory statute that does not involve loss of liberty and thus is subject to rational basis review].)

Under the deferential rational relationship level of scrutiny the court must ascertain the relation between the statutory classification and its object. One who attacks the classification must negate " ' "every conceivable basis which might support it." ' " (*Hofsheier, supra,* 37 Cal.4th at p. 1201.) In this case that means that equal protection is denied only if no plausible reason can justify the provision for judicial discretion in the imposition of sex offender registration requirements with respect to one class of offenders, but not as to the other. (*Id.* at p. 1204, fn. 6.) We therefore look first to the purposes of the mandatory registration requirement, then to the rational basis for the challenged classification. (*Id.* at pp. 1201–1202.)

In *Hofsheier,* the court identified the legislative purposes of section 290's mandatory sex offender registration requirement, as " ' " 'to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future,' " ' " and "to notify members of the public of the existence and location of sex offenders so they can take protective measures." (*Hofsheier, supra,* 37 Cal.4th at p. 1196.) With respect to these purposes the court could discern no rational basis for distinguishing between the two sorts of nonforcible sexual conduct with a minor involved in that case. "No reason has been suggested why judicial discretion is insufficient, and none comes to mind," for those who have engaged in voluntary oral copulation with a minor, while judicial discretion is deemed to be sufficient protection with respect to those who have engaged in voluntary sexual intercourse with a minor of the same age. (*Id.* at p. 1204.)

In this case the trial court rejected Shoemaker's equal protection analysis on its merits. It concluded that Shoemaker's offenses, involving possession and duplication of child pornography, were significantly different from the offenses cited for comparison. On that basis it found that applying the mandatory sex offender registration requirements to one category of offenses, but not to the other, does not violate equal protection under the California or United States Constitutions.

■ Shoemaker contends that there is no reasonable basis on which the Legislature could determine that registration must be mandatory for the

offenses of section 311.11 and section 311.3, while it is sufficient to rely on the court's discretion whether to require registration for those guilty of the seven other listed offenses—which he characterizes as more egregious and harmful to their victims. But the question is not which category encompasses offenses that are most egregious or harmful to their victims (a question for which we perceive no obvious answer). Rather, the question is whether the categories of offenses can be rationally differentiated, demonstrating some rational basis for the Legislature's imposition of a mandatory registration requirement for one category of offenses, while leaving to judicial discretion in each case whether to impose a registration requirement for those guilty of offenses in the other category of offenses.

That question is not answered by determining which category includes offenses that are deserving of greater punishment, for mandatory sex offender registration under section 290 is not a "punishment," but is merely a collateral consequence of the conviction. (*In re Alva* (2004) 33 Cal.4th 254, 293 [14 Cal.Rptr.3d 811, 92 P.3d 311]; *Hofsheier, supra*, 37 Cal.4th at p. 1197.) And although the offenses in both categories—those for which Shoemaker was convicted and those that he cites for comparison—entail sexual conduct involving minors, that alone does not mean that those convicted of the offenses in both categories are similarly situated for equal protection purposes.

We conclude that sections 311.11, subdivision (a), and 311.3, subdivision (a), address threats to minors of a different sort than the conduct in the offenses cited for comparison. The Legislature can rationally classify Shoemaker's offenses as coming within a category different from those in the seven other cited offenses, justifying their different treatment with respect to sex offender registration. The offenses that Shoemaker cites for comparison require conduct by the defendant that exposes the minor subject to sexual behavior or to sexually explicit material. That sort of conduct is not an element of the offenses for which Shoemaker was convicted. His offenses involve the sexual exploitation of minors of a sort that is not required for conviction of the offenses he lists for comparison. Accordingly, the Legislature's disparate classification of these offenses with respect to sex offender registration, and the imposition of mandatory registration for Shoemaker's offenses but not for the other offenses, does not implicate the equal protection clause.

Shoemaker was convicted of knowingly using images that depict children in sexually suggestive and provocative settings and circumstances, for the sexual stimulation of the viewer. The offenses Shoemaker lists for comparison, unlike those for which he was convicted, do not specify "the purpose of sexual stimulation of the viewer" as a defining characteristic of the offense.

(§§ 311.3, subd. (b)(5), 311.4, subd. (d); see § 311.11, subd. (a).) Moreover, although Shoemaker did not necessarily himself prepare the images for which he was convicted, or have any direct contact with the children who were their subjects, the Legislature was entitled to classify those who possess and duplicate the offending images for the purpose of their sexual stimulation as active participants—even driving forces—in the perpetuation of child pornography and the exploitation of its victims.

Child pornography is "intrinsically related to the sexual abuse of children," because it constitutes "a permanent record of the children's participation . . . ." (*New York v. Ferber, supra,* 458 U.S. at p. 759.) The state has a compelling interest in " 'safeguarding the physical and psychological well-being of a minor,' " and in protecting minors from sexual exploitation and abuse. (*Id.* at pp. 756–757.) "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." (*Id.* at p. 757.)

As the Legislature was entitled to conclude, keeping and duplicating a child's sexually provocative images for pornographic purposes—"for the purpose of sexual stimulation of the viewer"—perpetuates the exploitation and victimization of the images' subjects that occurred when the images were created, constituting not just a continuing exploitation of the child, but also a continuing danger to children generally. (See § 311.3, subd. (b).) Laws proscribing the possession and duplication of child pornography may be enacted on the basis of the state's compelling interests not just in protecting the physical and psychological well-being of minors, but also in destroying the market for the exploitative use of children by penalizing those who possess and view the offending materials. (*Osborne v. Ohio* (1990) 495 U.S. 103, 109–110 [109 L.Ed.2d 98, 110 S.Ct. 1691]; see *New York v. Ferber, supra,* 458 U.S. at pp. 756–758, 761–762.) Moreover, the ban on the private use of child pornography encourages possessors to destroy these materials, which constitute a permanent record of the abuse that may haunt its victims for years to come and, evidence suggests, may extend the demand for these materials. (*Osborne v. Ohio, supra,* 495 U.S. at pp. 109–110 [It is reasonable to conclude that "it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand."]; *New York v. Ferber, supra,* 458 U.S. at p. 759.)

The victims of the exploitation that is the subject of sections 311.11 and 311.3 can be seen to include not just the children whose images are actually depicted in it, and therefore whose exploitation is perpetuated by its possession and duplication; it also includes as its victims children in general. Children are the subject matter and reason for the existence of child pornography (even when they are not the actual subjects of the images involved in any particular case). They are harmed by the perpetuation of the

exploitation resulting from the continuing possession and duplication of such pornography for the viewers' sexual stimulation. Sections 311.11 and 311.3 seek to protect children from such exploitation, which is identified as conduct leading to predatory behavior.[22]

■ Conduct of the sort reflected in Shoemaker's offenses, that involves perpetuation of the exploitation of minors for purposes of the offender's sexual stimulation, can be rationally classified as conduct of a different sort than conduct involving exposure of minors to sexually explicit materials or engaging with them in voluntary sexual conduct. We therefore conclude that although Shoemaker's *Hofsheier* challenge is grounded on the court's analysis in *Hofsheier* and is not " 'frivolous, unreasonable, or without foundation' " (*Tutor–Saliba Corp. v. City of Hailey* (9th Cir. 2006) 452 F.3d 1055, 1060; see 42 U.S.C. § 1988; *California Correctional Peace Officers Assn. v. Virga* (2010) 181 Cal.App.4th 30, 39, fn. 7 [103 Cal.Rptr.3d 699]), it lacks merit. The Legislature could appropriately permit the exercise of judicial discretion to distinguish between conduct within the seven cited offenses that reasonably requires the protection and continuing oversight afforded by sex offender registration, and conduct that does not. (§ 290.006.) It could equally rationally conclude that the continued use and duplication of the sexually provocative images of children—the offenses underlying Shoemaker's conviction—necessarily involve the exploitation of children for the purpose of sexual gratification, and perpetuate the child pornography market and the victimization of children, such that the perpetrators of Shoemaker's offenses should in all cases be subject to the continuing scrutiny represented by lifetime sex offender registration. The imposition of a lifetime registration requirement for Shoemaker's offenses therefore does not violate his right to equal protection of the laws under the California or the United States Constitutions.

## CONCLUSION

Shoemaker's action fails to demonstrate that the application to him of section 290's mandatory sex offender registration requirements constitutes a violation of his right to equal protection of the laws under the federal or state Constitutions.

---

[22] In 2006, the voters passed Proposition 83, amending section 311.11. Section 2 recites in subsection (c) findings that "[c]hild pornography exploits children and robs them of their innocence. FBI studies have shown that pornography is very influential in the actions of sex offenders. Statistics show that 90% of the predators who molest children have had some type of involvement with pornography . . . ." (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) text of Prop. 83, § 2, approved Nov. 7, 2006, eff. Nov. 8, 2006; see Historical and Statutory Notes, 48 West's Ann. Pen. Code (2008 ed.) foll. § 311.11, p. 536.)

## DISPOSITION

The judgment is affirmed.

Mallano, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied April 16, 2013, and appellant's petition for review by the Supreme Court was denied June 12, 2013, S210454.