Filed 8/7/13  P. v. Barrera CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT GALINDO BARRERA, JR., et al.<br><br>    Defendants and Appellants. | 2d Criminal No. B238680<br>(Super. Ct. No. 1361756)<br>(Santa Barbara County) |

Robert Galindo Barrera (Barrera) and Richard Mariano Reyes (Reyes) challenge their first-degree murder convictions and sentences of 50 years to life.  We affirm.

*FACTS AND PROCEDURAL HISTORY*

Barrera and Reyes are members of the Westside Varrio Lampara Primera (VLP) street gang in Lompoc, California.  On January 14, 2009, fellow gang member Kevin Sullivan (Sullivan) drove them to rival gang territory, where they shot Daniel R., a 14-year-old, in the back.

At the time of the shooting, Daniel was alone, unarmed, and standing near his scooter.  Daniel had recently been "jumped in" to the Southside gang.  When Daniel saw people he did not recognize, he whistled and raised his hands in a gesture asking

Barrera, Reyes, and Sullivan why they were in his neighborhood. Barrera and Reyes answered by shouting, "Westside," and opening fire on Daniel. One of the bullets struck Daniel in the back, and another grazed him; he died from his wounds soon after.

Shells recovered at the scene came from two different .22-caliber rifles. Forensic tests were unable to determine from which weapon the fatal shot was fired.

After his arrest, Reyes asked to speak with police. He admitted to supplying Barrera and another gang member with a .22-caliber rifle right before the shooting, but stated he did not know why they wanted it. Reyes also denied being at the scene of the shooting, but recounted several specific details only someone present would know—that is, the color of Daniel's shirt, where the shooters stood, who shot first, and how many rounds they fired. Reyes claimed he learned all of these details from others.

Barrera and Reyes were charged with first-degree murder. (Pen. Code, §§ 187, subd. (a), 189.)[1] They were also charged with two enhancements: (1) a consecutive 15-year enhancement on the ground that the shooting was "for the benefit of, at the direction of, or in association with any criminal street gang" (§ 186.22, subd. (b)(1)); and (2) a consecutive 25-year-to-life enhancement on the alternative grounds that (A) each defendant "personally and intentionally discharge[d] a firearm and proximately cause[d] great bodily injury" (§ 12022.53, subd. (d)); or (B) a "principal" "personally and intentionally discharge[d] a firearm and proximately cause[d] great bodily injury (*id.* at subds. (d), (e)(1)) and the crime was gang-related under section 186.22, subdivision (b).[2]

They were jointly tried, but used separate juries so that the People could introduce, against Reyes alone, Reyes's statement implicating Barrera. Except for evidence related to Reyes's statement, the two juries heard the same evidence. The trial court instructed the jury on first-degree murder and the lesser-included offense of second-degree murder. The prosecutor argued that Reyes was guilty of murder either as a co-shooter or as the supplier of one of the rifles.

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] Sullivan was originally charged with murder, but entered a plea and was sentenced to 68 months in prison in exchange for his cooperation.

Barrera's jury found him guilty of first-degree murder and found both enhancements true. Reyes's jury also found him guilty of first-degree murder and found both enhancements true, but found the 25-year-to-life enhancement true solely on the ground that a "principal" discharged a firearm. His jury hung on the alternative ground for that enhancement (that is, whether Reyes "personally" discharged a firearm).

The trial court sentenced each defendant to prison for 25 years to life on the underlying first-degree murder count followed by a consecutive 25 years to life on the sentencing enhancement; it stayed the gang enhancements.[3]

## DISCUSSION

### I. *Validity of Reyes's First-Degree Murder Conviction*

A. *Significance of Reyes's Assault with a Firearm*

The court instructed Reyes's jury that he could be found guilty of first-degree murder under one of three theories: (1) if Reyes himself murdered Daniel; (2) if Reyes aided and abetted Barrera in murdering Daniel; or (3) if Barrera murdered Daniel, as long as that murder was a natural and probable consequence of an earlier assault with a firearm that Reyes committed himself or that Reyes aided and abetted Barrera in committing. Reyes argues that his first-degree murder conviction is invalid because the last of these three theories is "unauthorized" insofar as it could hold him criminally responsible for Barrera's murder of Daniel as the natural and probable consequence of *Reyes's own* prior assault. Reyes asserts that *People v. Olguin* (1994) 31 Cal.App.4th 1355 (*Olguin*) rejected the challenge he now raises, but contends that *Olguin* was wrongly decided and that imposing criminal liability on these facts constitutes a judicial expansion of criminal law in violation of section 6 ("[n]o act or omission . . . is criminal . . ., except as prescribed or authorized by [the Penal] Code").

---

[3] Barrera's abstract of judgment states that he was sentenced to life without possibility of parole. Both Barrera and the People agree that this is incorrect and that it must be modified to reflect the orally pronounced sentence of 50 years to life. (*People v. Mesa* (1975) 14 Cal.3d 466, 471.)

3

This case is different than *Olguin*. The issue in *Olguin* was whether a defendant is criminally liable for a cohort's act of murder as a natural and probable consequence of a predicate offense he alone committed. (*Olguin*, 31 Cal.App.4th at pp. 1375-1378.) Because Reyes and Barrera jointly committed the predicate offense of assault with a firearm, the question presented here is whether a defendant who aids and abets a cohort in committing a predicate offense and also commits it himself is criminally liable for the cohort's act of murder as a natural and probable consequence of the jointly committed predicate offense. We conclude that he is. (Accord, *People v. Culuko* (2010) 78 Cal.App.4th 307, 323-324 [reaching same result on similar facts].)

Traditional principles of aiding and abetting liability dictate that Reyes is criminally responsible for the natural and probable consequences of his jointly undertaken predicate offense. If Reyes had done no more than aid and abet Barrera with Barrera's assault with a firearm, he would be criminally liable for the natural and probable consequences of that assault. (*People v. Prettyman* (1996) 14 Cal.4th 248, 254.) The result does not change if Reyes happens to pick up a firearm and commits an assault with a firearm alongside Barrera. That is because Reyes and Barrera, by their joint perpetration of the assaults, are aiding and abetting one another in those assaults. (*People v. Delgado* (2013) 56 Cal.4th 480, 487 ["'When two persons or more commit a crime together, both may act in part as the actual perpetrator *and in part as the aider and abettor of the other*, who also acts in part as the actual perpetrator'"], italics added, quoting *People v. McCoy* (2001) 25 Cal.4th 1111, 1120 (*McCoy*); see also *People v. Beeman* (1985) 35 Cal.3d 547, 561 (*Beeman*) [person "aids and abets" when he "aids, promotes, encourages or instigates, the commission of a crime"].) Because Reyes's additional conduct in personally committing the predicate offense of assault with a firearm does not negate his criminal liability for simultaneously aiding and abetting Barrera's assault, (Civ. Code, § 3537 ["Superfluidity does not vitiate."]), Reyes is criminally liable for Barrera's murder of Daniel as an aider and abettor.

Moreover, this conclusion does not impermissibly create a judge-made crime because we are construing the scope of criminal liability that attaches to the "act"

of aiding and abetting that is proscribed by statute.  (§ 31.)  This does not create a new crime.  (Accord, *In re Hardy* (2007) 41 Cal.4th 977, 1025-1026 ["complicity" holding coconspirators criminally "'". . . liable for the acts of any of the others . . . within the reasonable and probable consequences of the common unlawful design" . . . '" not found in statutory text]; *People v. Cavitt* (2004) 33 Cal.4th 187, 196 ["complicity" doctrine under felony-murder rule holding a person criminally liable for all deaths having a "logical nexus . . . between the felony and the act resulting in death" not found in statutory text].)

B.  *Foreseeability of Degree of Murder*

Reyes next asserts that the trial court committed legal error because it never instructed the jury that, to convict him of first-degree murder on the theory that it was a natural and probable consequence of his aiding and abetting Barrera in assaulting Daniel with a firearm, the jury must find that a natural and probable consequence of the assault was "*first-degree* murder" rather than just "murder."

*People v. Woods* (1992) 8 Cal.App.4th 1570, was the first case to suggest that the natural and probable consequences theory required proof that a reasonable person in the defendant's position would have foreseen that the specific degree of murder was a natural and probable consequence of the predicate offense.  But *Woods* only required that such specificity "where the facts would support a determination that the greater crime [first-degree murder] was not a reasonably foreseeable consequence but the lesser offense [second-degree murder] was such a consequence."  (*Id.* at p. 1588.)

That prerequisite is absent here.  Applying *Woods's* formulation, the jury in this case would be required to make a finding regarding the foreseeability of first-degree murder only if the evidence supported a determination that, from the point of view of a reasonable person in Reyes's position, Barrera's assault with a firearm would *not* foreseeably result in a first-degree murder but *would* foreseeably result in a second-degree murder.  However, the facts do not support such a determination.  Barrera and Reyes repeatedly fired their rifles at an unarmed, rival gang member after driving to rival gang territory.

5

Citing his self-serving statement to police, Reyes suggests that the shooting actually occurred because he and Barrera were surprised by multiple rival gang members at the location; Reyes further speculates that Barrera's act in stepping around the car between his first and second volleys of shots evinces Barrera's personal (and hence unshared) desire to kill Daniel. Reyes's observations are misplaced because the issue is not what happened, but what was reasonably foreseeable. Thus, even if we accept Reyes's theories as to what actually happened, they do not undermine the inevitable conclusion that a person standing in Reyes's shoes would have known that a willful, deliberate and premeditated killing of a rival gang member was a reasonably foreseeable consequence of his and Barrera's mutual assault of that gang member with firearms. The facts accordingly do not support a determination that first-degree murder was unforeseeable, so there was no error under *Woods*.[4]

## II. *Attempted Murder Instruction*

Reyes (joined by Barrera) contends that the trial court should have instructed the juries not only on the lesser-included offense of second-degree murder, but also on the lesser-included offense of attempted murder. Attempted murder is a lesser-included offense of murder (*People v. Davidson* (2008) 159 Cal.App.4th 205, 210), and a trial court is required to instruct a jury on *all* lesser-included offenses, even if the defendant objects. (*People v. Whalen* (2013) 56 Cal.4th 1, 68 (*Whalen*); *People v. Breverman* (1998) 19 Cal.4th 143, 154-155 (*Breverman*).) However, this duty arises "'. . . only where there is 'substantial evidence' from which a rational jury could conclude that the defendant committed the lesser offense, and that he is not guilty of the greater offense. . . .'" (*Whalen*, *supra*, quoting *People v. DePriest* (2007) 42 Cal.4th 1, 50.) We review de novo the trial court's decision not to instruct on a lesser-included offense. (*People v. Souza* (2012) 54 Cal.4th 90, 113.)

---

[4] This conclusion means that Reyes's counsel was not constitutionally ineffective for not objecting to the jury instruction or the court's response to the jury's note. (See *Strickland v. Washington* (1984) 466 U.S. 668, 687.)

6

Reyes makes two arguments. First, he argues that the evidence supports the finding that he shot at Daniel, but did not establish that bullets from *his* rifle struck Daniel. Reyes reasons that these facts support the finding that he committed attempted murder, but not murder. We disagree. Both crimes require that the defendant intended to kill his victim (*People v. Campos* (2007) 156 Cal.App.4th 1228, 1242), so what distinguishes the two crimes is a death. The intended victim in this case died from a shot fired by Reyes or his cohort. Accordingly, a jury could not rationally find that Reyes's act of firing a rifle at Daniel with the intent to kill could constitute attempted murder but not first-degree murder. Reyes further argues that he never intended to kill Daniel (because Reyes originally wanted to kill a member of a different rival gang), but this argument does not support an attempted murder instruction because, if accepted, it would render Reyes not guilty of attempted murder as well.

Second, Reyes argues that the trial court's decision not to instruct on attempted murder rises to the level of a federal constitutional error. Our Supreme Court has held to the contrary. (*Breverman*, *supra*, 19 Cal.4th at pp. 165-172.)

### III. *Alleged Directed Verdict*

Barrera argues that the trial court effectively directed his jury to return a guilty verdict on the first-degree murder count by allowing his jury to remain in the courtroom when the court read the CALCRIM No. 403 instruction applicable only to Reyes's jury. A court surely violates due process when it directs a verdict against a criminal defendant (*United States v. Martin Linen Supply Co.* (1977) 430 U.S. 564, 572-573), but no such violation occurred here.

The instruction Barrera says tainted his jury was prefaced with the admonition that "[t]his instruction applies to Defendant Richard Reyes." Barrera's jury is presumed to have followed this admonition. (*Richardson v. Marsh* (1987) 481 U.S. 200, 211); *People v. Anzalone* (2013) 56 Cal.4th 545, 557.) Barrera has proffered no reason to conclude that his jury did or could not do so. More to the point, this instruction did not tell *any* jury to find Barrera guilty. To the contrary, it detailed that "the People *may*

7

prove" that Barrera (or Reyes) committed a murder—not that the People had already done so.

IV. *Improper Application of Sentencing Enhancements*

Barrera contends that he should not be subjected to the 25-year-to-life sentencing enhancement under section 12022.53, subdivision (d), under either theory presented to his jury. More specifically, he argues that (1) the enhancement for his "personal[]" discharge of a firearm proximately causing great bodily injury is not supported by substantial evidence; and (2) the fall-back enhancement for discharge of a firearm by a principal violates equal protection because it applies to crimes involving criminal street gangs but not other nefarious groups.

A. *Sufficiency of the Evidence*

A defendant will receive a consecutive 25-year-to-life prison sentence if (1) he or she "personally and intentionally discharges a firearm" and (2) "proximately causes great bodily injury . . . or death, to any person other than an accomplice . . . ." (§ 12022.53, subd. (d).) Barrera contests the evidence to support each element. We must uphold a jury's finding of this enhancement if it is supported by "'. . . substantial evidence—that is, evidence which is reasonable, credible and of solid value—such that a reasonable trier of fact could find the [enhancement true] beyond a reasonable doubt.'" (*People v. Watkins* (2012) 55 Cal.4th 999, 1019, quoting *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

Substantial evidence supports each element of this enhancement. Barrera argues that one witness said he only saw one shooter, but other witnesses saw two shooters and bullets from two different .22-caliber weapons were recovered at the scene. Moreover, one witness testified that Barrera admitted to shooting someone. Although contradicted, this evidence supports a reasonable jury's finding that Barrera personally discharged a firearm.

Barrera also contends that the People were unable to prove that he proximately caused Daniel's death because they were unable to match the bullet that killed Daniel to the rifle Barrera was shooting. By its plain language, this enhancement

8

"applies so long as [a] defendant's personal discharge of a firearm was a proximate, i.e., substantial, factor contributing to the [great bodily injury or death]." (*People v. Bland* (2002) 28 Cal.4th 313, 338.) Thus, as our Supreme Court has held, "[a] person can proximately cause a gunshot injury without personally firing the weapon that discharged the harm-inflicting bullet." (*Id.* at p. 337; see also *People v. Palmer* (2005) 133 Cal.App.4th 1141, 1150-1151 [same].)

B. *Equal Protection Challenge*

Barrera (along with Reyes) also argues that the 25-year-to-life sentencing enhancement premised on a "principal's intentional and personal discharge" of a crime cannot be applied because it violates equal protection. Barrera observes that the 25-year-to-life enhancement under section 12022.53, subdivision (d), usually requires proof that a defendant "personally and intentionally" discharge a firearm, but makes an exception if the shooting occurred "for the benefit of, at the direction of, or in association with any criminal street gang"; in this subset of cases, it is enough if a "principal" in the crime "personally and intentionally discharges a firearm," even if the defendant did not (*id.* at subd. (e); § 186.22, subd. (b).) Barrera asserts that this distinction violates equal protection because it arbitrarily singles out crimes associated with criminal street gangs for harsher punishment while shootings involving equally nefarious groups (such as hate groups, political extremists, or "thugs out to beat up people for the fun of it") are not. We review this constitutional challenge de novo. (*Shoemaker v. Harris* (2013) 214 Cal.App.4th 1210, 1223).

This equal protection challenge has already been rejected in *People v. Hernandez* (2005) 134 Cal.App.4th 474 and *People v. Gonzales* (2001) 87 Cal.App.4th 1. These cases held that our Legislature could rationally decide to deal with group-related gun violence one step at a time, and could reasonably start with criminal street gangs. (*Hernandez*, *supra*, at pp. 480-482; *Gonzales*, *supra*, at pp. 12-13.) Barrera argues that these cases were wrongly decided because they employed rational basis scrutiny rather than the strict scrutiny that is warranted for statutes infringing upon the "fundamental interest" of maintaining one's "right to liberty." Our Supreme Court

9

rejected a similar argument in *People v. Wilkinson* (2004) 33 Cal.4th 821, 837-838; see also *People v. Turnage* (2012) 55 Cal.4th 62, 74.)

*DISPOSITION*

As to Reyes, the judgment is affirmed. As to Barrera, we modify the abstract of judgment for Barrera to reflect the orally pronounced sentence of 50 years to life. The Superior Court Clerk shall prepare an amended abstract of judgment incorporating this change and forward a certified copy to the Department of Corrections and Rehabilitation. As so modified, the judgment as to Barrera is affirmed.

NOT TO BE PUBLISHED.


HOFFSTADT, J.[*]

We concur:


YEGAN, A. P. J.


PERREN, J.

---

[*] (Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

10

Edward H. Bullard, Judge

Superior Court County of Santa Barbara

_____

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant Robert Galindo Barrera, Jr.

Dan Mrotek, under appointment by the Court of Appeal, for Defendant and Appellant Richard Mariano Reyes.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Noah P. Hill, Deputy Attorney General, for Plaintiff and Respondent.