Filed 6/29/22; Certified for Publication 7/22/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| ROBERT HENRY LEGG, | C094657 |
| Petitioner, | (Super. Ct. No. STK-CR-FE-2011-0007015) |
| v. | |
| DEPARTMENT OF JUSTICE, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

1

Petitioner Robert Henry Legg pleaded guilty to committing a lewd act upon a 14- or 15-year-old child, a conviction that required him to register as a sex offender for life. (Pen. Code, § 290.)[1]  A subsequent amendment to section 290 created a tiered registry for adult sex offenders, requiring a minimum registration period for some offenses and lifetime registration for others; petitioner's offense continued to require lifetime registration.  Petitioner sought a writ of mandate in the trial court, claiming that his lifetime registration requirement denied him equal protection of the laws.  The trial court denied the petition, and he appeals.  We affirm.

## FACTS AND PROCEEDINGS

The underlying facts of the case are not relevant; it suffices to say that petitioner inserted his finger into the vagina of the female victim.  At the time of the offense, petitioner was 43 years old, and the victim was 15 years old.

A complaint charged petitioner with one count of rape by force or fear (§ 261, subd. (a)(2); count 1), and one count of lewd acts upon a 14- or 15-year-old-child, with the intent of arousing, appealing to, and gratifying the lust, passions and sexual desires of petitioner and the child (§ 288, subd. (c); count 2).[2]  On November 14, 2011, petitioner pleaded guilty to count 2, and count 1 was dismissed.  Under the Sex Offender Registration Act, petitioner was required to register as a sex offender for life in light of his conviction.  (Former § 290, subds. (b), (c); Stats. 2007, ch. 579, § 8.)  On May 18, 2012, the trial court denied petitioner's motion to withdraw his plea, in which he had alleged in part that he was not advised of the requirement that he register as a sex

---

[1]  Further undesignated statutory references are to the Penal Code.

[2]  At the time of petitioner's plea, section 288, subdivision (c) was not comprised of subparts.  After his conviction, the Legislature created different offenses in subdivision (c)(1) and (c)(2).  Based on the charging language (alleging the age of the victim as 14 or 15) and the reference to both the victim's and petitioner's dates of birth as part of the factual basis for the plea, the complaint implicated only subdivision (c)(1).

offender pursuant to section 290. Over petitioner's objection, the court proceeded with sentencing and sentenced him to the upper term of three years in prison.

In October 2017, the Legislature enacted, and the Governor signed, Senate Bill No. 384 (2017-2018 Reg. Sess.) (Senate Bill No. 384), which established a three-tiered registry for sex offenders convicted in adult court, requiring an offender to register for a minimum of 10 or 20 years for certain offenses and for life for others, depending on the offender's designated tier. (See Stats. 2017, ch. 541, § 4; Stats. 2018, ch. 423, § 52.) Under section 290 as amended by Senate Bill No. 384, petitioner's conviction under section 288, subdivision (c)(1) remains subject to mandatory lifetime registration, while a section 288, subdivision (a) offender is now only subject to a minimum 20-year registration period. (§ 290, subds. (c), (d)(2)A), (d)(3)(C)(ix).)

On May 3, 2021, petitioner filed a petition for writ of mandate in the San Joaquin County Superior Court raising an equal protection challenge to the disparate sex offender registration requirements of section 288, subdivision (a) and subdivision (c)(1) under the new tiered registration system as set forth in section 290 as amended. On June 30, 2021, the trial court denied his petition.

Petitioner timely appealed the trial court's denial of his petition for writ of mandate. The case was fully briefed in April 2022, and it was assigned to this panel on April 29, 2022. The parties waived argument and the case was submitted on June 24, 2022.

## DISCUSSION

Petitioner argues that subjecting criminal defendants convicted of violating section 288, subdivision (c)(1) to mandatory lifetime sex offender registration violates his state and federal constitutional rights to equal protection of the laws because those convicted of violating section 288, subdivision (a) are subject to a more lenient registration requirement. Petitioner's equal protection claim is subject to de novo review.

3

(*Shoemaker v. Harris* (2013) 214 Cal.App.4th 1210, 1223.)  As we will explain, we disagree with petitioner's argument.

In relevant part, section 288, subdivision (a) criminalizes "willfully and lewdly commit[ting] any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child."

Section 288, subdivision (c)(1) provides in part:  "A person who commits an act described in subdivision (a) with the intent described in that subdivision, and the victim is a child of 14 or 15 years, and that person is at least 10 years older than the child, is guilty of a public offense and shall be punished by imprisonment in the state prison for one, two, or three years, or by imprisonment in a county jail for not more than one year."

I

*Equal Protection Principles*

The United States and California Constitutions prohibit denial of equal protection of the laws.  (U.S. Const., 14th Amend.; Cal Const., art. 1, § 7, subd. (a).)  The state constitutional guarantee is independent of the federal guarantee, but, except in cases of gender, the state and federal guarantees are applied identically.  (*Connerly v. State Personnel Bd.* (2001) 92 Cal.App.4th 16, 31-32.)  The equal protection clause requires the state to treat all persons similarly situated alike or, conversely, to avoid all classifications that are "arbitrary or irrational" and those that reflect " 'a bare . . . desire to harm a politically unpopular group.' "  (*City of Cleburne v. Cleburne Living Ctr., Inc.* (1985) 473 U.S. 432, 446, 447.)

"The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner."  (*In re Eric J.* (1979) 25 Cal.3d 522, 530.)  We do not inquire "whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' "  (*Cooley v. Superior Court*

4

(2002) 29 Cal.4th 228, 253.)  "The use of the term 'similarly situated' in this context refers only to the fact that ' "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." . . .'  [Citation.] There is always some difference between the two groups which a law treats in an unequal manner since an equal protection claim necessarily asserts that the law in some way distinguishes between the two groups.  Thus, an equal protection claim cannot be resolved by simply observing that the members of group A have distinguishing characteristic X while the members of group B lack this characteristic.  The 'similarly situated' prerequisite simply means that an equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified."  (*People v. Nguyen* (1997) 54 Cal.App.4th 705, 714.)

Where the two groups are similarly situated, the high court under federal law has prescribed different levels of scrutiny depending on whether the law "targets a suspect class."  (*Romer v. Evans* (1996) 517 U.S. 620, 631.)  "At a minimum, a statutory classification must be rationally related to a legitimate government purpose.  [Citations.] Classifications based on race or national origin [citation], and classifications affecting fundamental rights [citation] are given the most exacting scrutiny.  Between these extremes of rational basis review and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy."  (*Clark v. Jeter* (1988) 486 U.S. 456, 461; *Connerly v. State Personnel Bd.*, *supra*, 92 Cal.App.4th at pp. 31-32, citing *United States v. Virginia* (1996) 518 U.S. 515, 532.)

Because sex offender registration does not implicate a suspect class or a fundamental right, rational basis review applies here.  (*People v. McKee* (2010) 47 Cal.4th 1172, 1211, fn. 14 [lifetime sex offender registration requirement is a regulatory

5

statute that does not involve loss of liberty and thus is subject to rational basis review].) Under rational basis review, even where the state treats two similarly situated groups differently, there is no constitutional violation unless there is "a rational relationship between the disparity of treatment and some legitimate governmental purpose." (*Heller v. Doe* (1993) 509 U.S. 312, 320.) " 'This standard of rationality does not depend upon whether the lawmakers ever actually articulated the purpose they sought to achieve." (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881.) In determining if there is a rational basis for the disparity in treatment, " 'a court may engage in " 'rational speculation' " as to the justifications for the legislative choice,' " and such speculation need not have any empirical basis or foundation in the record. (*Ibid*., citing *People v. Turnage* (2012) 55 Cal.4th 62, 74.) Therefore, "[t]o mount a successful rational basis challenge, a party must ' "negative every conceivable basis" ' that might support the disputed statutory disparity." (*Ibid*., citing *Heller,* at p. 320.)

II

*Analysis*

Petitioner contends individuals convicted of offenses under section 288, subdivision (a) are similarly situated to those who committed offenses under section 288, subdivision (c)(1) because "both offenses proscribe the exact same conduct (any willful lewd or lascivious act) with the exact same specific intent." Accordingly, he contends, a 43-year-old individual convicted under section 288, subdivision (c)(1) is similarly situated to a 43-year-old individual convicted under section 288, subdivision (a).

The Attorney General responds that individuals convicted of offenses under section 288, subdivision (a) and (c)(1) are not similarly situated because the entire class of individuals convicted under subdivision (c)(1) are mature adults who have committed sexual offenses against children, whereas some individuals convicted under subdivision (a) are minors and young adults, including individuals involved in "teen romances." Accordingly, the Attorney General argues, the age differential required for conviction

6

under subdivision (c)(1) renders individuals convicted under that subdivision not similarly situated to those convicted under subdivision (a).  As we will explain, we agree with the Attorney General.

Initially, we agree with petitioner that the offenses proscribed by section 288, subdivisions (a) and (c)(1) are generally similar to each other in that they both prohibit a person from willfully and lewdly committing any lewd or lascivious act upon or with any part of the body of a child.

However, a defendant's age can provide a meaningful distinction between offense categories for equal protection purposes.  (See *In re Arthur W.* (1985) 171 Cal.App.3d 179 [longer minimum period of license revocation for minors convicted of DUI does not violate equal protection:  "intoxicated drivers under 18 years of age are not similarly situated to adults" (*id*. at p. 191) because "longer period of license revocation imposed upon minor offenders serves an additional state interest in the protection and safety of the minor, as well as the public at large" (*id*. at pp. 190-191)].)  Here, subdivision (a) requires that the victim be 13 years old or younger, and it does not require that the offender be any specific age.  On the other hand, subdivision (c)(1) requires that the victim be 14 or 15 years old and that the defendant be at least 10 years older than the victim.  "The Legislature could have properly concluded that it was necessary to specifically prohibit sexual conduct between a 14- or 15-year-old and an adult at least 10 years older and to include mandatory sex offender registration based upon a conviction for the offense, because of the potential for predatory behavior resulting from the significant age difference between the adult and the minor." (*People v. Cavallaro* (2009) 178 Cal.App.4th 103, 114 (*Cavallaro*).)  Thus, while we recognize section 288, subdivisions (a) and (c)(1) share similarities in the prohibited conduct and intent, the age differential required by subdivision (c)(1) is a meaningful distinction demonstrating that persons violating the two statutes are not similarly situated.

7

Petitioner relies on *People v. Hofsheier* (2006) 37 Cal.4th 1185 (*Hofsheier*), overruled on other grounds in *Johnson v. Department of Justice*, *supra*, 60 Cal.4th 871. In *Hofsheier*, a 22-year-old defendant pleaded guilty to unlawful, nonforcible oral copulation of a 16-year-old female, a violation of section 288a, subdivision (b)(1), and was ordered to register as a sex offender. (*Hofsheier*, at p. 1192.) On appeal, the defendant contended that he was denied his constitutional right to equal protection of the laws because a person convicted of unlawful intercourse with a minor (§ 261.5) under the same circumstances would not be subject to mandatory registration. (*Hofsheier*, at p. 1193.) Our Supreme Court concluded that the groups Hofsheier identified were similarly situated because the only difference between the two offenses was the nature of the sexual act. (*Id.* at p. 1200.)

But here, the differences between the groups petitioner identifies is *not* the nature of the sexual act. Instead, this case is more like *Cavallaro, supra*, 178 Cal.App.4th 103, which both parties discuss and on which the trial court relied. In *Cavallaro*, the defendant was convicted under section 288, subdivision (c)(1), and he asserted that he was similarly situated to persons of the same age convicted of unlawful, nonforcible sexual intercourse with a 14- or 15-year-old child under section 261.5, subdivision (d). However, the appellate court concluded the groups were not similarly situated because while section 261.5, subdivision (d) required that the defendant be at least 21 years of age, it did not require a minimum age differential between defendant and victim. (*Cavallaro*, at p. 114.)

Petitioner asserts that *Cavallaro* supports his position because that case acknowledged the legislative desire to protect 14- and 15-year-old children from predatory older adults (§ 288, subd. (c)(1)) to the same extent that children 13 years old and under are protected by section 288, subdivision (a). *Cavallaro* quoted *People v. Paz* (2000) 80 Cal.App.4th 293, at page 297: " 'We see in this statutory background a legislative desire to protect 14- and 15-year-olds from predatory older adults to the same

8

extent children under 14 are protected by subdivision (a) of section 288. [Citation.] Subdivision (c) (now (c)(1)) was enacted to make the lewd conduct proscribed by subdivision (a) subject to felony punishment when committed on slightly older victims by considerably older adults. The inclusion of the decade age difference in the subdivision reflects a recognition that a 'sexually naïve' [citation] child of 14 or 15 could fall victim to a more experienced adult, a vice the Legislature was attuned to and took action to prevent." (*Cavallaro*, *supra*, 178 Cal.App.4th at pp. 114-115.) But contrary to petitioner's assertion, the Legislature's intent to protect both 14-and 15-year-old children from lewd contact by predatory older adults in addition to children younger than 13 from any lewd contact does not also mean that those predatory older adults are similarly situated to individuals who commit lewd acts against children younger than 13. *Cavallaro* made that point clear when it concluded that the required age differential in section 288, subdivision (c)(1) rendered offenders under that subdivision differently situated to offenders who were older than 21 at the time of their offense but were not required to be a specified number of years older than their victim.

In *People v. Tuck* (2012) 204 Cal.App.4th 724, the appellate court concluded that persons convicted of sexual offenses under section 288, subdivisions (a) or (c)(1) were not similarly situated to persons convicted of sex offenses under other statutes that do not require the victim to be so young. (*Tuck*, at p. 737.) Like his argument related to *Cavallaro*, petitioner contends this reasoning in *Tuck* also somehow demonstrates that individuals who violate section 288, subdivision (a) and (c)(1) *are* similarly situated. Again, we disagree. The conclusion that violations of section 288, subdivisions (a) and (c)(1) are themselves different from other sex offenses not requiring the victim to be within a specific age range does not necessarily lead to the conclusion that individuals convicted of offenses under subdivisions (a) and (c)(1) are similarly situated to one another for equal protection purposes. As we have discussed, the requirement that the

9

offender be at least 10 years older than the 14- or 15-year-old victim distinguishes subdivision (c)(1) from subdivision (a).

In his reply brief, petitioner contends that individuals who are 24 or 25 years old are young adults similarly situated to teenagers. Although recent changes in the law have been driven by the differences in moral culpability and brain development of offenders 25 years of age and younger versus older offenders, the legislative background of section 288, subdivision (c)(1) indicates an intent to protect 14-and 15-year-old children from "predatory older adults." (See *Paz*, *supra*, 80 Cal.App.4th at p. 297.) As stated in *Paz*, "[t]he inclusion of the decade age difference in the subdivision reflects a recognition that a 'sexually naïve' [citation] child of 14 or 15 could fall victim to a more experienced adult, a vice the Legislature was attuned to and took action to prevent." (*Ibid.*)

Petitioner's equal protection challenge fails because he has not established that he, as an individual required to register as a sex offender for life due to his conviction under section 288, subdivision (c)(1), is subjected to unequal treatment as compared to a similarly situated group. In any event, even were we to agree with petitioner that the similarly situated prerequisite is satisfied, he has failed to show that there is no rational relationship between the challenged statutory disparity and some legitimate governmental purpose. The relevant inquiry in this case is whether a legitimate reason exists that permits the Legislature to require lifetime registration for persons convicted under section 288, subdivision (c)(1), while allowing persons convicted under section 288, subdivision (a) to petition for termination from the sex offender registry after the expiration of the mandated minimum registration period (typically 20 years). Such a reason exists here.

The Legislature could have reasonably determined that the challenged statutory disparity is warranted to serve the legitimate governmental purpose of protecting the public from considerably older adults who have preyed on young and vulnerable children. (See *Cavallaro*, *supra*, 178 Cal.App.4th at p. 114 [explaining that the Legislature could have properly concluded it was necessary to require lifetime sex

10

offender registration for a person convicted under § 288, subd. (c)(1) because of the potential for predatory behavior resulting from the significant age difference between the adult and the minor victim].) The legislative concern giving rise to the enactment of subdivision (c)(1) of section 288--sexual exploitation of young, vulnerable children by significantly older predatory adults (*People v. Paz, supra,* 80 Cal.App.4th at pp. 296-297)--is not always present when a person violates subdivision (a) of section 288, since a violation of that provision can involve consensual sexual relations between minors or teenagers in a romantic relationship. (See, e.g., *People v. Tuck* (2012) 204 Cal.App.4th 724, 727-728 [19 year old who engaged in consensual sexual relations with girlfriend "a few months shy of 14" convicted under § 288, subd. (a)].) Thus, although those convicted of offenses under section 288, subdivision (a) are subject to harsher penalties (three, six, or eight years of imprisonment; convictions classified as a "super strike" (§ 667, subd. (e)(2)(C)(iv)(III)) than those convicted under subdivision (c)(1) (one, two, or three years imprisonment; offenses may be prosecuted as a misdemeanor or a felony), the Legislature reasonably could have determined that section 288, subdivision (a) offenses could be committed by younger offenders with more potential to rehabilitate--despite the severity of the offense--than their subdivision (c)(1) counterparts, who are necessarily older and more predatory, even if their conduct occurs with an older victim.[3]

Finally, we disagree with petitioner that our conclusion would require individuals convicted of nonforcible oral copulation or sodomy with a minor under the age of 14 years and more than 10 years younger than the defendant (§§ 286, subd. (c)(1), 287, subd. (c)(1)) to be subject to tier three mandatory lifetime registration. Like offenders under

---

[3] Petitioner argues that offenders under subdivision (a) may be the same age as offenders under subdivision (c)(1). However, as we have discussed, there is no minimum age *requirement* set forth in subdivision (a); therefore, whether *some* offenders under subdivision (a) could possibly be the same age as offenders under subdivision (c)(1) does not affect our analysis.

section 288, subdivision (a), and unlike offenders under section 288, subdivision (c)(1), there is no minimum age requirement for offenders under sections 286, subdivision (c)(1) or 287, subdivision (c)(1). Accordingly, the Legislature could have reasonably concluded that offenders under section 288, subdivision (c)(1)--who are necessarily at least 24 or 25 years old--are less likely to be rehabilitated than those offenders convicted under sections 286, subdivision (c)(1) and 287, subdivision (c)(1).

In short, because here a plausible basis does exist for the challenged statutory disparity, petitioner's equal protection claim fails.

## DISPOSITION

The trial court's order denying petitioner's petition for writ of mandate is affirmed.

/s/
Duarte, J.

We concur:

/s/
Robie, Acting P.J.

/s/
Krause, J.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| ROBERT HENRY LEGG, | C094657 |
| Petitioner, | (Super. Ct. No. STK-CR-FE-2011-0007015) |
| v. | |
| DEPARTMENT OF JUSTICE, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Respondent; | |
| THE PEOPLE, | [NO CHANGE IN JUDGMENT] |
| Real Party in Interest. | |

1

THE COURT:

The opinion in the above-entitled matter filed June 29, 2022, was not certified for publication in the Official Reports.  For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:


_____/s/_____
Robie, Acting P. J.



_____/s/_____
Duarte, J.



_____/s/_____
Krause, J.

2

# EDITORIAL LISTING

APPEAL from a judgment of the Superior Court of San Joaquin County, Xapuri Villapudua, Judge. Affirmed.

Jill M. Klein, under appointment by the Court of Appeal, for Petitioner.

Rob Bonta, Attorney General, Thomas S. Patterson, Assistant Attorney General, Paul Stein and Chad A. Stegeman, Deputy Attorneys General, for Respondent.

No appearance for Real Party in Interest.