Filed 9/13/23  Lund v. Cal. Dept. of Corrections and Rehabilitation CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ERIC CURTIS LUND, | D080589 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2021-00042047-CU-CR-CTL ) |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Keri G. Katz, Judge.  Affirmed.

Law Office of Susannah Mary Lund and Susannah M. Lund for Plaintiff and Appellant.

Rob Bonta, Attorney General, Monica N. Anderson, Senior Assistant Attorney General, Neah Huynh, Jamie M. Ganson and Oliver C. Wu, Deputy Attorneys General for Defendants and Respondents.

Eric Curtis Lund, a former prison inmate, appeals from a judgment entered after the trial court sustained without leave to amend a demurrer by

respondents California Department of Corrections and Rehabilitation (CDCR) and A. Garcia, a CDCR employee, to Lund's operative first amended complaint for negligence, false imprisonment, state and federal constitutional violations of due process and association rights, and injunctive relief. Lund contends the court erroneously ruled (1) his Penal Code[1] section 311.11, subdivision (c)(1) conviction is a qualifying crime under section 3058.9; (2) section 3058.9 applies to this case despite the fact he was not released from prison under parole; and (3) section 3058.9, subdivision (b)(3)'s exception was inapplicable. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

We state the facts from the well-pleaded allegations of the operative first amended complaint. (*Zolly v. City of Oakland* (2022) 13 Cal.5th 780, 786.)

In May 2019, a Solano County jury convicted Lund of possessing over 600 images of minors (including prepubescent minors) "personally engaging in or simulating sexual conduct." (§ 311.11, subd. (c)(1).) The court sentenced Lund to the maximum term of five years in state prison (§ 311.11, subd. (c)) and required him to register as a sex-offender for life (§§ 290-290.024).

While in CDCR's custody, Lund completed several college courses and earned credits to advance his release date; however, the credits were not timely entered into CDCR's information technology system.

---

[1] Undesignated statutory references are to the Penal Code.

2

On August 2, 2020, Lund submitted an administrative appeal, "asking that his outstanding education and milestone credits[2] be entered into the CDCR system as soon as possible[,]" and that appeal was ultimately granted.

On August 12, 2020, CDCR notified the Butte County Probation Department that Lund's scheduled release date was November 10, 2020.

On August 26, 2020, after CDCR completed updating Lund's credits, he had accumulated more credits than he needed for his release. CDCR set his release date for September 10, 2020, based on regulations stating CDCR may not award an inmate credits that would advance his release date to less than 15 days from the date the credits are awarded. (Cal. Code Regs., tit. 15 (Regulations), § 3043 (c)(2).)

On September 8, 2020, CDCR changed Lund's release date to comply with section 3058.9,[3] which requires CDCR to notify certain law enforcement

---

[2] Regulations section 3043.3 explains that "[t]he award of Milestone Completion Credit . . . requires the achievement of a distinct objective of approved rehabilitative programs, including academic programs, social life skills programs . . . or other approved programs with similar demonstrated rehabilitative qualities."

3

authorities 45 days before the release of certain inmates like Lund, based on his specific conviction. Accordingly, on October 10, 2020, CDCR released Lund to the Butte County Probation Department, which was responsible for his post-release community supervision. (Pen. Code, § 3451; Regulations,

---

3    Section 3058.9 provides: "(a) Whenever any person confined to state prison is serving a term for the conviction of child abuse pursuant to Section 273a, 273ab, 273d, or any sex offense identified in statute as being perpetrated against a minor victim, or as ordered by any court, the Board of Prison Terms, with respect to inmates sentenced pursuant to subdivision (b) of Section 1168 or the Department of Corrections, with respect to inmates sentenced pursuant to Section 1170, shall notify the sheriff or chief of police, or both, and the district attorney, having jurisdiction over the community in which the person was convicted and, in addition, the sheriff or chief of police, or both, and the district attorney having jurisdiction over the community in which the person is scheduled to be released on parole or rereleased following a period of confinement pursuant to a parole revocation without a new commitment. [¶] (b)(1) The notification shall be made by mail at least 45 days prior to the scheduled release date, except as provided in paragraph (3). In all cases, the notification shall include the name of the person who is scheduled to be released, whether or not the person is required to register with local law enforcement, and the community in which the person will reside. The notification shall specify the office within the Department of Corrections with the authority to make final determination and adjustments regarding parole location decisions. [¶] (2) Notwithstanding any other provision of law, the Department of Corrections shall not restore credits nor take any administrative action resulting in an inmate being placed in a greater credit earning category that would result in notification being provided less than 45 days prior to an inmate's scheduled release date. [¶] (3) When notification cannot be provided within the 45 days due to the unanticipated release date change of an inmate as a result of an order from the court, an action by the Board of Prison Terms, the granting of an administrative appeal, or a finding of not guilty or dismissal of a disciplinary action, that affects the sentence of the inmate, or due to a modification of the department's decision regarding the community into which the person is scheduled to be released pursuant to paragraph (4), the department shall provide notification as soon as practicable, but in no case less than 24 hours after the final decision is made regarding where the parolee will be released."

4

§ 3079.)

On September 10, 2020, Lund filed a CDCR form "requesting an immediate re-evaluation of his release date," but he received no response. The next day he filed an "Inmate Appeal" requesting CDCR immediately re-evaluate his release date, but he again received no response. On September 15, 2022, Lund requested from Garcia documentation and a written explanation regarding his changed release date, but Garcia did not respond.

*Lund's First Amended Complaint*

In his first amended complaint, Lund alleged causes of action for negligence (first cause of action); false imprisonment (second cause of action); and violations of his constitutional rights to due process (sixth cause of action) and familial association (seventh and eighth causes of action) against all defendants. He sued Garcia, who was "assigned as a Case Records Analyst at the Richard J. Donovan Detention Center in San Diego," where Lund was incarcerated for some months alleging violations of 42 U.S.C. section 1983 (third through fifth causes of action). In his ninth cause of action, Lund sought "an injunction restraining CDCR from applying [section] 3058.9 to anyone not being released on parole, thereby preventing the illegal expenditures and waste of tax dollars."

Lund alleged he suffered harm from being over-detained by 30 days because during the Covid-19 pandemic, he was an inmate over the age of 55 with documented but confidential security risks, and CDCR housed him in a double cell with an inmate who was classified at a higher risk level.

*Respondents' Demurrer*

Respondents demurred to Lund's operative complaint, arguing it did not allege facts sufficient to state the alleged causes of action. They specifically claimed he misinterpreted section 3058.9, and CDCR did not

5

overdetain him. They also argued Lund's first, second, sixth, seventh and eighth causes of action were barred under the Government Claims Act's statute of limitation; and CDCR was immune from liability under Government Code sections 844.6 and 845.8. They also argued Garcia was entitled to qualified immunity from prosecution of the federal claims (third, fourth and fifth causes of action), and statutory immunity under Government Code sections 820.4, 820.2 and 845.8 as against Lund's state law claims for damages (first, second, sixth, seventh and eighth causes of action). Finally, they argued Lund was not entitled to injunctive relief because he did not plead a taxpayer claim for such relief under Code of Civil Procedure section 526, subdivision (a).

Respondents requested judicial notice of the abstract of judgment in the underlying case and other documents in Lund's federal litigation, including the federal court's grant of a voluntary dismissal.

Lund opposed the demurrer, arguing section 3058.9 applies to parolees and not to him as he was released on community supervision; he was convicted under section 311.11, which did not identify itself as a crime perpetrated against a minor victim as required by section 3058.9; and alternatively, the section 3058.9 subdivision (b)(3) exemption from the 45-day requirement applied here. He further contended his state law claims were timely, CDCR was not immune from the state law claims, and Garcia was not entitled to qualified immunity or immunity under Government Code sections 820.4 and 820.2. Lund sought judicial notice of section 3058.9's legislative history, and the Static-99R Coding Rules (a risk assessment manual for assessing sex offenders' recidivism risk).

6

*The Court's Ruling*

The court granted the parties' requests for judicial notice, and sustained the demurrer without leave to amend on all causes of action: "[T]he plain meaning of [section] 3058.9 is that the 45-day notice requirement to the sheriff, chief of police and district attorney 'having jurisdiction over the community in which the person was convicted' applies to all forms of release, which would include both parole and the 'postrelease community supervision' alleged in the first amended complaint. The court is not persuaded by [Lund's] reliance on use of the term 'parole' in the second phrase of subdivision (a). Use of the prefatory phrase 'and, in addition,' demonstrates that the second phrase applies only to the notice to be provided to the sheriff, chief of police and district attorney 'having jurisdiction over the community in which the person is scheduled to be released on parole.' Also, [section] 3058.9[, subdivision] (b)(2), which sets forth the 45-day notice requirement, specifically uses the term 'release date' not parole. Nor is the court persuaded by [Lund's] proffered statutory analysis. An interpretation of different requirements for the convicting community and the receiving community is not absurd—especially when considering that [Lund] is required to register as a sex offender with the law enforcement agency in his place of residence. [Citation.] Use of the word 'parole' in other portions of [section] 3058.9 does not require an interpretation that the notice required to be provided to the convicting community only apply to parole."

The court concluded section 3058.9, subdivision (b)(3)'s exception did not apply: "[T]he allegations of the first amended complaint are not that the alleged administrative appeal affected [Lund's] sentence. There are no allegations that [his] original sentence was altered. Rather, [his] allegations are that the alleged administrative appeal and the credits allowed as a result

7

altered [his] release date. . . . Such circumstances do not support application of the subdivision (b)[(3)] exception.")

The court concluded: "As all of [Lund's] claims are dependent on [his] establishing that the 45-day notice requirement of [section] 3058.9 applies only to persons released on parole, all of [his] claims fail. [Lund] fails to proffer any facts to cure this pleading deficiency. Therefore, the court finds [he] fails to demonstrate a reasonable probability the first amended complaint can be amended to plead a basis for liability against [d]efendants under any of the causes of action pled." The court did not address respondents' arguments regarding their immunity from lawsuits.

DISCUSSION

A. *Applicable Law*

"A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the sustaining of a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. [Citation.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. [Citation.] We construe the pleading in a reasonable manner and read the allegations in context. [Citation.] We must affirm the judgment if the sustaining of a general demurrer was proper on any of the grounds stated in the demurrer, regardless of the trial court's stated reasons. [Citation.] [¶] It is an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable probability that the defect can be cured by amendment. [Citation.] The burden is on the plaintiff to demonstrate how the complaint can be amended to state a valid cause of

8

action. [Citation.] The plaintiff can make that showing for the first time on appeal." (*Chapman v. Skype, Inc.* (2013) 220 Cal.App.4th 217, 225-226.)

On appeal, we "may affirm the judgment on any ground apparent from the record, regardless of the grounds upon which the trial court sustained the demurrer." (*Jones v. Whisenand* (2017) 8 Cal.App.5th 543, 550.)

B. *Lund Was Not Entitled to Be Released Prior to October 10, 2020*

The implicit but essential premise for Lund's claim is that he was entitled to education credits against his sentence, which advanced his release date to September 10, 2020, 15 days after his credits were updated on August 26, 2020. Educational credits are provided for in regulations promulgated by CDCR. The award of credits is addressed generally in Regulations section 3043.[4] During the relevant time period, subdivision (c)(2) of that section included a "release date restriction" indicating that "[u]nder no circumstance shall a determinately sentenced inmate be awarded credit . . . by the department which advances his or her release to a date less than 15 calendar days from the date the award . . . is entered into the department's information technology system . . . ." But it goes on to specify that "[t]his restriction shall instead be 45 calendar days for all inmates convicted of an offense subject to the provisions found in subdivision (a) of section 3058.9 of the Penal Code . . . ."

The crucial question in this case is whether Lund was subject to the 45-day restriction in Regulations section 3043, subdivision (c)(2) rather than the 15-day restriction. That question, in turn, depends on whether Lund was "convicted of an offense subject to the provisions found in subdivision (a) of section 3058.9 of the Penal Code." According to the People, CDCR's initial

---

[4] Specific types of credits are addressed in the sections that follow section 3043. As previously noted, this case involves milestone completion (Regulations, § 3043.3) and educational merit (Regulations, § 3043.5) credits.

ruling on Lund's administrative appeal, purporting to award educational credits, amounted to a legal error because, by terms of the regulation, credits should never have been granted. The proper interpretation of the applicable statutes and regulations present questions of law that we review de novo in deciding whether the demurrer to Lund's first amended complaint was properly sustained without leave to amend.

1. *A conviction for violating section 311.11, subdivision (c)(1) constitutes a "sex offense identified in statute as being perpetrated against a minor victim" within the meaning of section 3058.9*

Regulations section 3043 awards credits differently depending on the offense of which the inmate was convicted. A special restriction applies if the inmate was convicted of "an offense subject to the provisions found in subdivision (a) of [Penal Code] section 3058.9." That subdivision, in turn, applies to "any person confined to state prison [who] is serving a term for the conviction of child abuse pursuant to [Penal Code s]ection 273a, 273ab, 273d, or any sex offense identified in statute as being perpetrated against a minor victim."

Because Lund's conviction for violating section 311.11, subdivision (c)(1) is not specifically enumerated, we first must decide whether Lund was convicted of a "sex offense identified in statute as being perpetrated against a minor victim." Lund maintains he was not convicted of a qualifying sex offense. He supports his argument by comparing section 311.11 to the statutes specifically listed in section 3058.9, and by referring to the Static-

10

99R manual, which is used "to assess the risk imposed by adult males required to register as sex offenders in California."[5]

Section 311.11, subdivision (a), provides: "Every person who knowingly possesses or controls any matter, representation of information, data, or image, including, but not limited to, any film, filmstrip, photograph, negative, slide, photocopy, videotape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film or filmstrip, the production of which involves the use of a person under 18 years of age, knowing that the matter depicts a person under 18 years of age personally engaging in or simulating sexual conduct, as defined in subdivision (d) of Section 311.4 is guilty of a felony."

Section 311.4, subdivision (d), provides: " '[S]exual conduct' means any of the following, whether actual or simulated: sexual intercourse, oral copulation, anal intercourse, anal oral copulation, masturbation, bestiality, sexual sadism, sexual masochism, penetration of the vagina or rectum by any

_____

[5] Lund cites to the Static-99R, which states "Victims portrayed in child pornography are not scored as victims for the purposes of Static-99R." The Static-99-R continues, "If the child pornography existed on the internet before the offender came across it, the victims would not count, even though a live child was abused at some point in the past. The difference is that this offender has not **directly** participated in this abuse." Based on the Static 99R description of "victims," Lund contends: "The sole point here is that, in terms of assessing the potential risk of harm that someone convicted of possessing child pornography poses to another human being, the crime is not viewed as one perpetrated against a minor 'victim.' This data-backed understanding—taken from the precise risk assessment tool that the Legislature itself has caused to be implemented in this state—is both relevant and persuasive in determining what definition the Legislature intended to supply to the term 'perpetrated against a minor victim' in [s]ection 3058.9."

object in a lewd or lascivious manner, exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer, any lewd or lascivious sexual act as defined in Section 288, or excretory functions performed in a lewd or lascivious manner, whether or not any of the above conduct is performed alone or between members of the same or opposite sex or between humans and animals. An act is simulated when it gives the appearance of being sexual conduct."

Lund was punished under section 311.11, subdivision (c)(1), which specifies a five-year term for those persons who knowingly possess over 600 images of children "under 18 years of age personally engaging in or simulating sexual conduct," and of which at least 10 depict "a prepubescent minor or a minor who has not attained 12 years of age."

Although section 3058.9, subdivision (a), does not expressly identify section 311.11 as a qualifying offense, it includes an illustrative list of qualifying statutes and adds this catchall term to encompass other qualifying statutes: "or any sex offense identified in statute as being perpetrated against a minor victim." The question we must resolve is whether section 311.11 qualifies as one of those additional statutes.

"Our goal in construing a statute is 'to determine and give effect to the intent of the enacting legislative body.' [Citation.] ' "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context." [Citation.] If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls.' [Citation.] If, however, the statute is susceptible to more than one interpretation, we 'may consider various extrinsic aids, including the purpose of the statute, the evils

to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute.' " (*Holland v. Assessment Appeals Bd. No. 1* (2014) 58 Cal.4th 482, 490.)

By its plain terms, section 311.11 criminalizes the possession of a series of material that incorporate in any manner, any film or filmstrip, "the production of which involves the use of a person under 18 years of age, knowing that the matter depicts a person under 18 years of age personally engaging in or simulating sexual conduct." Further, section 311.11 incorporates by reference the definition of "sexual conduct" from section 311.4, subdivision (d), as set forth above. As a court has stated in interpreting section 311.11, "[Although defendant] did not necessarily himself prepare the images for which he was convicted, or have any direct contact with the children who were their subjects, the Legislature was entitled to classify those who possess and duplicate the offending images for the purpose of their sexual stimulation as active participants—even driving forces—in the perpetuation of child pornography and the exploitation of its victims. [¶] Child pornography is 'intrinsically related to the sexual abuse of children,' because it constitutes 'a permanent record of the children's participation . . . .' [Citation.] The state has a compelling interest in ' "safeguarding the physical and psychological well-being of a minor," ' and in protecting minors from sexual exploitation and abuse. [Citation.] 'The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance.' " (*Shoemaker v. Harris* (2013) 214 Cal.App.4th 1210, 1230.) We therefore conclude that section 3058.9 applies to Lund's conviction under section 311.11 because he was convicted of possessing images of minors under the age of 18 who were engaging in sexual conduct.

13

Our conclusion is bolstered by the reasoning in *Shoemaker v. Harris,* *supra,* 214 Cal.App.4th at pp. 1230-1231, in which the court examined section 311.11 in the context of California's mandatory sex-offender registration requirement. (*Id.* at p. 1230.) As *Shoemaker* explained, " The victims of the exploitation that is the subject of sections 311.11 and 311.3 can be seen to include not just the children whose images are actually depicted in it, and therefore whose exploitation is perpetuated by its possession and duplication; it also includes as its victims children in general. Children are the subject matter and reason for the existence of child pornography (even when they are not the actual subjects of the images involved in any particular case). They are harmed by the perpetuation of the exploitation resulting from the continuing possession and duplication of such pornography for the viewers' sexual stimulation. Sections 311.11 and 311.3 seek to protect children from such exploitation, which is identified as conduct leading to predatory behavior." (*Id.* at pp. 1230-31.) Further, the California Supreme Court explained that child pornography, even mere possession of it, " 'harms and debases the most defenseless of our citizens,' " (*In re Grant* (2014) 58 Cal.4th 469, 477) and the Legislature has determined "that whether the pornography involves a child aged 11 or 17, its possession *is proximately linked to the sexual abuse of a child.*" (*Id.* at pp. 477-478, italics added.)

Lund contends the "actus reus" of section 311.11 is "*possession of contraband*, not abuse of a minor." He distinguishes the statutes expressly listed in section 3058.9 as involving "an *actus rea* of abuse against an identifiable minor victim. In contrast, [s]ection 311.11 does not involve a comparable *actus rea.*"

"Except for strict liability offenses, every crime has two components: (1) an act or omission, sometimes called the actus reus; and (2) a necessary

14

mental state, sometimes called the mens rea." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) Lund limits the actus reus required for a conviction under section 311.11 to possession of contraband, but reads out of it the statute's specification of the subject matter the offender possesses, which is materials representing a minor engaging in or simulating certain defined "sexual conduct." As stated above, the Legislature was entitled to conclude that possession of such materials is a driving force in the perpetuation of child pornography and the exploitation of its victims. (*Shoemaker v. Harris, supra,* 214 Cal.App.4th at p. 1230.) We therefore conclude section 311.11's actus reus of possession of material depicting sexual conduct qualifies that statute as a "sex offense identified in statute" perpetrated against a minor victim within the meaning of section 3058.9.

In light of our resolution of this issue based on the plain language of sections 3058.9 and 311.11, and without recourse to extrinsic interpretative aids, we are unpersuaded by Lund's contention, made with no reference to authority, that the court "erred in finding the Static-99R coding rules to be irrelevant to its determination of whether the Legislature views [s]ection 311.11 as a crime perpetrated against a minor 'victim.' "

2. *Because Lund was convicted of a qualifying sex offense, he was not entitled to the award of any credits that would have resulted in his release prior to October 10, 2020*

Lund argues that even if he was convicted of a qualifying sex offense, Penal Code section 3058.9 *still* does not apply because it only governs inmates released on parole rather than those subject to post-release community supervision (PRCS). In support he cites various cases that distinguish the parole system from PRCS. (See, e.g., *People v. Steward* (2018) 20 Cal.App.5th 407, 418 ["PRCS is an alternative supervision system, distinct

15

from parole"]; accord, *People v. Freeman* (2021) 61 Cal.App.5th 126, 134.) But regardless whether Penal Code section 3048.9 itself applies to PRCS inmates, Lund ignores the fact that under the governing regulation—Regulations section 3043—he was never entitled to the claimed credits because his conviction made him subject to a 45-day rule apart from the applicability of Penal Code section 3058.9. Since the claimed credits could not be "entered into the Department's information technology system" until August 26, 2020, the regulation specifies he could not be *awarded* any credits that would advance his release to a date earlier than October 10.

Lund suggests this interpretation misreads the regulation. He contends that by referring to "inmates convicted of an offense *subject to the provisions found in subdivision (a) of section 3058.9 of the Penal Code,*" the 45-day restriction in Regulations section 3043 meant to include only prisoners released on parole and not those subject to PRCS. We do not think this a reasonable reading of words of the regulation. Lund would construe this language to focus on *inmates* subject to the provisions of Penal Code section 3058.9, subdivision (a), violating the basic rule of grammar that modifiers be placed next to the words they modify. The more natural and logical meaning is that the phrase "subject to the provisions found in subdivision (a) of section 3058.9 of the Penal Code" modifies *offenses* and not *inmates.* Because the offense of which Lund was convicted falls within the parameters defined by Penal Code section 3058.9, subdivision (a)—i.e., a sex offense against a minor victim—he was not entitled to the award of any

credits that would set his release date less than 45 days after those credits could have been recorded.[6]

We therefore conclude as a matter of law that Lund cannot state a claim based on his entitlement to additional educational credits. As a result, the trial court did not err in sustaining the demurrer to his first amended complaint without leave to amend.

DISPOSITION

The judgment is affirmed.


O'ROURKE, Acting P. J.

WE CONCUR:


IRION, J.


DATO, J.

---

[6]    At oral argument, Lund's counsel emphasized that CDCR actually awarded the credits and then withdrew them. This is a distinction without a difference. If, as we hold, Lund was never entitled to the award of credits under the applicable regulation, CDCR's action to correct its own mistake was proper.